[No. 7707–4–I.   Division One.   February 2, 1981.]

NORMAN LIDSTRAND, ET AL, *Respondents,* v. SILVER–CREST INDUSTRIES, *Appellant.*

360

*Clinton, Fleck, Glein & Brown* and *Michael E. Jacobsen*, for appellant.

*Barney, Cromwell, Weiner & Mendoza, Richard M. Barney, Jr.,* and *Gregory F. Cromwell,* for respondents.

JAMES, C.J.—Plaintiffs Norman and Sherry Lidstrand brought this action to recover damages claimed to have been sustained because of defects in a mobile home manufactured by defendant Silvercrest Industries. Silvercrest appeals the trial judge's award of damages and attorney's fees in favor of the Lidstrands on theories of defective manufacture, breach of warranty, and violation of the Washington Consumer Protection Act, RCW 19.86. We affirm the judgment for actual damages and reverse the judgment for punitive damages and attorney's fees under the Consumer Protection Act.

In November 1973, Mr. and Mrs. Roy Kosanke took delivery of a mobile home manufactured by Silvercrest and sold by Budget Mobile Homes of Edmonds, Washington. The home was expressly warranted free from defects in material and workmanship for 12 months from delivery, but otherwise was sold "as is." The warranty purported to be "in lieu of" all other state and federal warranties. Exhibit 14. Soon after the Kosankes purchased the home, the bathroom ceiling began to leak near an overhead fixture. Kosanke informed Silvercrest about the leak. Kosanke also requested that the State Department of Labor and Industries inspect the home. The state inspector found 15 specific violations of state standards on his first visit in July 1974, although none of the cited violations specifically referred to the leaky bathroom ceiling. Silvercrest sent repair crews to correct these violations, but they did not initially repair the bathroom ceiling leak.

The Kosankes, who sold the home to the Lidstrands on October 21, 1974, informed the Lidstrands of the bathroom ceiling leak. After the sale, the bedroom ceiling began leaking. Silvercrest sent a repair crew which fixed this leak and

the one in the bathroom. Other repairs were made to bring the home into compliance with state standards. By the final inspection on March 6, 1975, all original violations were cleared. During this time, Silvercrest did not advise the Lidstrands that, because they were not the original owners, the mobile home was not covered by warranty.

In June 1975, the Lidstrands moved the home to Westport, Washington. When the 1975 fall rainy season began, numerous additional leaks appeared in the front bedroom, the kitchen, dining room, family room, living room, and front entry. The carpeting was soaked and drapes and clothing in the home were damaged or ruined. When the Lidstrands again requested repairs, Silvercrest refused and informed the Lidstrands the express warranty did not extend to second owners. By its terms, however, the warranty was not limited to the original purchaser.

After prompting from the State, Silvercrest agreed to inspect the home in December 1975, and one of its repair crews again attempted repairs. Lidstrand and a private repairman also attempted repairs without success. This action was then filed.

The trial judge awarded damages for ruined clothing and other articles inside the home, for rental of alternative housing, and for the cost of repairs to the mobile home. He also awarded $1,000 punitive damages and $5,000 attorney's fees under the Consumer Protection Act.

Silvercrest contends the Lidstrands' action is one founded on theories of breach of implied warranties of merchantability and fitness for a particular purpose. Citing *Berg v. General Motors Corp.*, 87 Wn.2d 584, 555 P.2d 818 (1976), and *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 592 P.2d 631 (1979), Silvercrest argues the Lidstrands cannot recover because there is no privity of contract between them. The Lidstrands respond that theories of express warranty, negligence, and strict liability support the trial judge's decision.

Washington courts have consistently required privity of contract between the parties in actions founded upon

warranty. *Daughtry v. Jet Aeration Co., supra.* The requisite privity may be established for an intended third party beneficiary of a warranty, however, without showing a direct contractual relationship between seller and ultimate user. *Schroeder v. Fageol Motors, Inc.,* 12 Wn. App. 161, 528 P.2d 992 (1974), *rev'd in part on other grounds,* 86 Wn.2d 256, 544 P.2d 20 (1975); *Chandler v. Hunter,* 340 So. 2d 818 (Ala. App. 1976). Here, an express warranty was extended by Silvercrest to the Kosankes, the original purchasers of the mobile home. If, however, the Lidstrands were intended third party beneficiaries of the warranty, they may recover.

The trial judge found that "said mobile home was 'covered' by a warranty of defendant's based upon their acts, conduct, and documents." Finding of fact No. 15. Both Silvercrest's express warranty and numerous warranty work order forms were introduced by the Lidstrands. Silvercrest's warranty promises the purchaser that "THE COMPONENT PARTS IN YOUR NEW MOBILE HOME ARE WARRANTED FOR twelve (12) months after delivery to you . . . to be free from defects in material and workmanship." Exhibit 14. Silvercrest does not qualify this promise by adding language which restricts the warranty to the original owners. The sole reference to "original purchaser" is the requirement that the "original purchaser" mail the warranty card within 30 days of the date of purchase. Exhibit 14.

In *Schroeder v. Fageol Motors, Inc., supra* at 165, we found that a warranty that an engine would be free of defects "'for two years or 100,000 miles or 3,600 hours of operation . . .'" was "[o]bviously . . . for the benefit of the operator . . ." or end–user of the engine. There, the end–user purchased the product in used condition from a dealer, but the manufacturer was held liable to the purchaser who was an intended beneficiary of the manufacturer's warranty. Given a passive anticipated product use such as shelter, a manufacturer would not be expected to refer to operation or use of its product. On its face, a warranty that the home will be defect free for 12 months is a promise

there will be no defects during that time, regardless of who happens to own the product. We conclude that any owner of the mobile home during the 1–year warranty period was intended to benefit from Silvercrest's warranty.

The trial judge concluded "[t]hat defendant had notice of defective [sic] construction defects almost immediately after the Kosankes, the original owners, took possession" and that "defendant had further and timely notice of defects in the construction of said mobile home soon after plaintiffs took possession in November of 1974." Conclusion of law No. 5. He found that "extensive water leaks occurred in the mobile home" and "as a result of the extensive water leakage problems . . .," plaintiffs suffered damages. Findings of fact Nos. 6, 18. He found that the mobile home, when reassembled at Westport, "was in the exact same status and condition as when it was manufactured by the defendant." Finding of fact No. 4.

The findings also detail the defects which Lidstrand and his mover discovered prior to reassembly:

> That plaintiff and [his mover] examined interior parts of said mobile home and found that insulation was missing in places in the walls, the vapor barrier was incomplete in places, the siding was improperly overlapped in a fashion which allowed driving rain and water to flow freely through to the interior portions of the walls, the roof was sagging in one place and many of the laps in the front of the mobile home lacked caulking of any kind.

Finding of fact No. 9. The trial judge concluded that "the water leakage and other problems were a result of defects in the manufacture of said mobile home, which defects existed at the time said mobile home was manufactured by defendant . . ." Conclusion of law No. 3. No error is assigned to the factual elements of these findings and conclusions.

■ Upon appeal of nonjury trials, "respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court." *Hallin v. Bode,* 58 Wn.2d 280, 281, 362

P.2d 242 (1961), quoting *In re Estate of Dand,* 41 Wn.2d 158, 247 P.2d 1016 (1952); *see* 5 Am. Jur. 2d *Appeal and Error* § 840 (1962). From the findings of fact entered, it may be reasonably inferred that the defects which became apparent after the 1–year period were related to and caused by the same defects which existed at the time the mobile home was manufactured. We conclude that Silvercrest breached its warranty and that the Lidstrands were intended beneficiaries of that warranty.

Silvercrest promised to honor its warranty by replacing or repairing any defective parts. Assuming, without deciding, that Silvercrest intended this to be an exclusionary clause which limited the remedy for breach of warranty, the Lidstrands have remedies otherwise available under the Uniform Commercial Code (U.C.C.) if a limited remedy "fail[s] of its essential purpose . . ." RCW 62A.2–719(2). Unreasonable delays in repairing or inability to adequately repair a product where the manufacturer has promised such repairs causes a limited remedy "'to fail of its essential purpose'." *Ehlers v. Chrysler Motor Corp.,* 88 S.D. 612, 619, 226 N.W.2d 157, 161 (1975). "An unsuccessful effort to remedy the defects renders the seller liable on his warranty; . . ." *Schroeder v. Fageol Motors, Inc., supra* at 165, quoting 77 C.J.S. *Sales* § 340 (1952). *Accord, Melby v. Hawkins Pontiac, Inc.,* 13 Wn. App. 745, 537 P.2d 807 (1975). The Lidstrands are entitled to the remedies otherwise available under the U.C.C.

Consequential damages recoverable for breach of warranty include property damage proximately resulting from breach of warranty, RCW 62A.2–715(2)(b), and losses due to general requirements of which the seller had reason to know. RCW 62A.2–715(2)(a). The proper test is whether losses were reasonably foreseeable, not whether they were actually foreseen by the seller. J. White & R. Summers, *Uniform Commercial Code* § 10–4, at 397 (2d ed. 1980); *see Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 390 P.2d 677 (1964). If a manufactured home is rendered essentially

uninhabitable by defects which the manufacturer warranted did not exist, an expense for alternative living quarters is reasonably foreseeable. The Lidstrands were awarded damages for alternative living quarters, increased utility costs, cleaning bills, and losses on damaged items of personal property including drapes, carpets, clothing, and furniture. These items of consequential damages were properly awarded under RCW 62A.2–715.

■■ The trial judge also awarded the costs of repair previously incurred by the Lidstrands and the reasonable costs of additional repairs to remedy the defective condition. RCW 62A.2–714(2) provides that

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

However, this is not intended to be the exclusive remedy, Official Comment 2, RCWA 62A.2–714; 67 Am. Jur. 2d *Sales* § 739 (1973). Under RCW 62A.2–714(1), the buyer who accepts nonconforming goods may recover damages for "the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." This is an appropriate alternative measure of damages for breach of warranty, 67 Am. Jur. 2d *Sales* § 739 (1973). Both incurred repair costs, *Lanners v. Whitney*, 247 Ore. 223, 428 P.2d 398 (1967), and reasonably expected repair costs are damages "resulting in the ordinary course of events" from the breach of warranty and were properly awarded for breach of warranty. We, therefore, affirm the judgment for actual damages in its entirety.

Because the trial judge awarded punitive damages and attorney's fees under the Consumer Protection Act, RCW 19.86, we must determine whether Silvercrest engaged in any "unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." as are prohibited by the act. RCW 19.86.020. A Consumer Protection Act claim may be

based on a per se violation of a statute, *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978), or on deceptive practices unregulated by statute but involving the public interest. *Anhold v. Daniels*, 94 Wn.2d 40, 614 P.2d 184 (1980).

> For the plaintiffs to recover for a per se violation of the Consumer Protection Act, they must prove: (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect.

*Dempsey v. Joe Pignataro Chevrolet, Inc.*, 22 Wn. App. 384, 393, 589 P.2d 1265 (1979). If there is no specific statutory violation, there must be unfair or deceptive conduct in a trade or commerce which impacts the public interest. The

> presence of public interest is demonstrated when . . . (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold v. Daniels, supra* at 46.

The Lidstrands contend that any or all of the following acts of Silvercrest support the trial judge's finding of a Consumer Protection Act violation: (1) the affixing at a plant other than the manufacturing plant of a Washington insignia signifying compliance with this state's administrative regulations governing mobile homes in violation of WAC 296-48-765, (2) the giving of an express warranty which grants very limited rights to the purchaser and requires him to waive all other state and federal warranty rights, (3) the manufacture of a mobile home not in compliance with administrative regulations enacted pursuant to a statutory command, RCW 43.22.340, to protect the public interest in this area.

The sole evidence which suggests the insignia was affixed at other than the manufacturing plant was the testimony of a Washington Department of Labor and Industries mobile

home inspector. His testimony establishes he did not know where the insignia was affixed:

Q [by Lidstrands' counsel] [H]ave you come to learn where the Washington insignia or approval plate . . . was installed?

A Well, I am not—I have nothing in writing on that, but I think it was installed at Woodburn [Oregon] because Woodburn had plan approvals filed with our department, and blank insignias were issued to the Woodburn plant . . .

He also testified that the identical situation existed at Silvercrest's California plant. On cross–examination, he testified as follows:

Q . . . [I]s there some problem with the California plant putting the insignia on?

A This I can't say. There wasn't any problem. As far as I was concerned, when I first inspected that home, I was under the impression that it had been manufactured at the Woodburn plant. I took it at face value because the Washington insignia was on it.

This is not substantial evidence that Silvercrest affixed its insignia at the Woodburn plant.

■ Both the per se test of *Salois* and the non–per se test of *Anhold* require a causal relation between the practice engaged in by the defendant and the damages suffered by the plaintiff. We have determined the Lidstrands are intended beneficiaries of Silvercrest's express warranty and may recover actual damages on that basis. The Lidstrands could recover no more even if they were allowed damages on any other warranty theory. The Lidstrands have shown no damage proximately caused by any deceptive or unfair practices related to Silvercrest's warranty.

Lastly, the Lidstrands contend the Consumer Protection Act was violated by the manufacture and sale of a mobile home in violation of Washington's administrative regulations. The manufacture and sale of mobile homes is a business affecting the public interest. The Director of the Department of Labor and Industries is required to prescribe rules and regulations "in order to protect the health

and safety of the people of this state from dangers inherent in the use of substandard and unsafe body and frame design, construction, . . ." RCW 43.22.340. Mobile home manufacture is extensively regulated by statute, RCW 43.22.340, .345, .360, and administrative rule, *e.g.,* WAC 296–48–701.

The State's regulation of mobile home construction was sufficiently extensive to require our consideration of whether manufacture of mobile homes was an otherwise regulated action or transaction which was then exempt from application of the Consumer Protection Act. RCW 19.86.170. Until the legislature amended RCW 19.86.170 in 1974, the act did not apply to any "actions or transactions otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state . . ." Laws of 1967, ch. 147, § 1, p. 710. Although extensive regulation of a business does not by itself preclude application of the Consumer Protection Act, if the particular practice which caused injury is regulated, the Consumer Protection Act would not apply. *Dick v. Attorney General,* 83 Wn.2d 684, 521 P.2d 702 (1974); *Kittilson v. Ford,* 23 Wn. App. 402, 595 P.2d 944 (1979), *aff'd,* 93 Wn.2d 223, 608 P.2d 264 (1980). Although the Lidstrands do not rely upon a specific statutory or regulatory violation, they contend their injury resulted from Silvercrest's violation of one or more statutes or regulations. Thus, their Consumer Protection Act claim is premised upon particular practices which were otherwise regulated and hence exempt from application of the act.

The act now exempts only "actions or transactions *permitted* by any other regulatory body or officer . . ." (Italics ours.) RCW 19.86.170. This change expands the rights given to consumers and hence must be applied prospectively only. *Johnston v. Beneficial Management Corp. of America,* 85 Wn.2d 637, 538 P.2d 510 (1975). As the mobile home was manufactured and sold in 1973, we conclude the Lidstrands cannot recover under the Consumer Protection Act.

The judgment for actual damages is affirmed, and the judgment for punitive damages and attorney's fees under the Consumer Protection Act is reversed.

RINGOLD and DURHAM, JJ., concur.