LEWIS REFRIGERATION COMPANY, a
corporation, Plaintiff-Appellant,

v.

SAWYER FRUIT, VEGETABLE AND
COLD STORAGE COMPANY,
Defendant-Appellee.

No. 80–1011.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1982.

Decided May 26, 1983.

Henry L. Guikema (argued), Murray, Mroz & Guikema, Grand Rapids, Mich., for plaintiff-appellant.

Gregory Prasher (argued), Clary, Nantz, Wood & Van Orden, Grand Rapids, Mich., for defendant-appellee.

Before LIVELY and KEITH, Circuit Judges, and NEWBLATT,* District Judge.

NEWBLATT, District Judge.

## I FACTS

This is an appeal in a diversity action originally brought on March 18, 1974 by Lewis Refrigeration Co. (hereinafter Lewis) against Sawyer Fruit, Vegetable and Cold Storage Cooperative Co. (hereinafter Sawyer). Lewis sued Sawyer to collect a balance allegedly due under an agreement in which Lewis sold Sawyer a freezer. Sawyer counterclaimed against Lewis asserting counts of breach of contract, breach of warranty and misrepresentation.

The case arose out of a 1970 contract between Sawyer and Lewis. The contract provided for Lewis to sell Sawyer an individually quick-frozen freezer. The typed portion of the contract covered contract pages 2–7; the printed portion covered contract pages 7–12.

The typed portion of the contract contained warranties that the freezer was capable of processing six thousand pounds of various fruits per hour and that the freezer would use no more than 1.8 liquid pounds of Freon per one hundred pounds of frozen products. Paragraph 6A of the typewritten portion of the contract contained a clause setting out a guarantee obligating Lewis to supply, for a given period of time, the Freon that the freezer consumed over the warranted rate. Paragraph B3 of the

---

* Hon. Stewart A. Newblatt, U.S. District Judge, Eastern District of Michigan, sitting by designation.

printed portion of the agreement provided that, in the event the machine failed to perform at the warranted rates, Lewis would have the right to repair or replace promptly the malfunctioning part of the machine. Paragraph B3 provided that rescission was the only other available remedy.

In addition to paragraph B3, the contract contained another remedy limitation. This limitation, found at paragraph B4 of the handwritten portion of the contract, excluded consequential damages.[1]

A consent judgment eventually was entered in favor of Lewis for the claim for the balance due on the contract. Trial on Sawyer's counterclaim began on April 4, 1978. After denying Lewis's motions for a directed verdict and for judgment notwithstanding the verdict, the district court instructed and then sent the case to the jury. A verdict was returned for Sawyer in the amount of $25,823 in lost profits and $27,080 in excess Freon costs.

In this appeal, Lewis advances four arguments: (1) the district court erroneously allowed the jury to consider whether, under the state of Washington[2] version of UCC § 2–719(2), the paragraph B3 repair and rescission limitation failed its essential purpose; (2) the district court erred by not generally disallowing consequential damages in favor of benefit of the bargain damages under Washington's version of UCC § 2–714(2); (3) the district court should have granted a new trial on the ground that Sawyer failed to amend and supplement discovery responses as required

by Rule 26(e)(2) of the Federal Rules of Civil Procedure; (4) the district court erroneously omitted making a judicial determination of whether the B3 consequential damages exclusion was unconscionable—in the absence of such a determination the consequential damages exclusion should have blocked the jury from awarding consequential damages.

We shall now consider each of the four arguments advanced by Lewis. For the reasons to follow, we affirm the district court as to the first three arguments and vacate and remand as to the fourth argument.

II LEGAL ANALYSIS

A. Failure of Repair and Rescission Remedy to Achieve its Essential Purpose.

The first argument raised by Lewis involves the district court's treatment of RCW § 62A.2–719(2), the state of Washington's statutory version of UCC § 2–719(2). The statute provides:

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title."

 Lewis argues that the district court erroneously allowed the jury to reach the issue of whether the paragraph B3 repair and rescission exclusive remedy failed its essential purpose as described in section 2–719(2). Lewis contends that its motions for directed verdict[3] and judgment not-

---

1. The paragraphs B3 and B4 remedy limitations are found at app. pp. 60–61. See also pp. 2–3 of appellant's preliminary brief. The paragraph 6 A Freon Warranty is found at app. p. 63. See also pp. 7–8 of appellee's brief.

2. Under the agreement, the law of the state of Washington—Lewis's place of business—governs. See app. p. 69. Such a choice of law is permissible under MCLA 440.1105. It is necessary to make certain that Michigan law authorizes such a choice of law agreement. This is because the law of the forum state ordinarily would govern this diversity action. See Waltzer v. Transidyne General Corp., 697 F.2d 130 (CA 6, 1983).

3. In determining whether the motions for a directed verdict and for judgment notwithstanding the verdict should have been granted, we must look to the Washington standards as to these motions. This follows from the Sixth Circuit adherence to the minority rule that in federal court diversity cases state law governs the standard for granting directed verdict and judgment notwithstanding the verdict motions. See Warkentien v. Vondracek, 633 F.2d 1 (CA 6, 1980). On the other hand, in this—and all other Circuits—the Federal Rules of Civil Procedure, Rule 56 standard governs summary judgment in diversity cases. See Schultz v. Newsweek, 668 F.2d 911, 917 (CA 6, 1982).

withstanding the verdict should have been granted as to the issue of the repair and rescission remedy barring the award of any other damages. Lewis thus urges us to vacate the jury's verdict to the extent that it includes $25,823 in lost profit consequential damages.[4]

In opposing this argument, Sawyer contends that it presented enough evidence to permit a reasonable fact finder to determine that the exclusive remedy contractual provision failed its essential purpose. In deciding this issue, we shall separately consider the repair and rescission portions of the exclusive remedy.

 Lewis appears to concede that the repair remedy failed its essential purpose. See p. 2 of Appellant's reply brief. We agree. In any event, there can be no doubt but that the record contains trial evidence adequate to support the conclusion that Lewis was unable to repair promptly the freezer to meet performance warranties. See e.g., Appendix at 151–157; 162–63.

Furthermore, we note that Washington appellate decisions clearly hold that a seller's inability to repair fully a product causes the repair and rescission remedy to fail of its essential purpose under RCW 62A.2–719(2). See Lidstrand v. Silvercrest Industries, 28 Wash.App. 359, 623 P.2d 710 (1981); Melby v. Hawkins Pontiac, 13 Wash.App. 745, 537 P.2d 807 (1975). We thus conclude that a jury could reasonably have determined that the repair remedy failed its essential purpose under section 2–719(2).

A much closer question obtains with respect to the rescission remedy. Sawyer contends that the jury could reasonably have determined that the rescission remedy failed its essential purpose because of either of the following two reasons: (1) Lewis would have been extremely reluctant to rescind the transaction or (2) Sawyer would have experienced severe financial loss in the event the contract was rescinded.

 Sawyer's first contention must be rejected outright. The section 2–719(2) "essential purpose" language refers to circumstances that make it exceedingly impractical to carry out the essence of an agreed-upon remedy. Given that Lewis had categorically refused to rescind the transaction, the rescission provision could have been en-

---

Under Washington Law, the directed verdict or the judgment notwithstanding the verdict movant must show that, drawing all inferences in favor of the non movant, the evidence is such that a reasonable jury could not enter judgment in favor of the non movant. See Bombardi v. Pochel's Appliance, 9 Wash.App. 797, 515 P.2d 540 (1973); Davis v. Early Construction Co., 63 Wash.App. 252, 386 P.2d 958 (1963).

Under Sixth Circuit law, the summary judgment movant must show that, taking the pre-trial evidence in the light most favorable to the non movant, there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Locke v. Commercial Union, 676 F.2d 205 (CA 6, 1982). Furthermore, the summary judgment movant carries the burden of showing that no genuine issue of fact exists. See Weaver v. Jago, 675 F.2d 116 (CA 6, 1982).

On appeal, Lewis has not even attempted to show that, on the basis of the pre-trial evidence, it was entitled to summary judgment. Instead, Lewis has merely boilerplated its briefs with the bare assertion that it was entitled to summary judgment. See e.g., appellant's preliminary brief at 15. In light of this, we reject outright the contention that Lewis has demonstrated on appeal that it was wrong-fully denied summary judgment by the district court. Thus, this opinion will only address the question of whether Lewis should have been granted a directed verdict or a judgment notwithstanding the verdict under the Washington standard.

4. The briefs do not specifically address the issue of the paragraph 6A guarantee as to Freon usage damages. See app. at pp. 63–66 for paragraph 6A and district court's discussion of paragraph 6A.

The text of this paragraph does not really indicate that it was intended as a remedy limitation. But even if paragraph 6A is construed as a separate limitation, it is quite clear that there was a genuine issue as to whether Lewis's inability to adequately repair the freezer caused the paragraph 6A limitation to fail of its essential purpose. Thus, it was entirely appropriate to give the Freon usage damages issue to the jury and the $27,080 Freon usage damages award cannot be disturbed. The analysis of legal issues in the remainder of this opinion is, therefore, directed at the jury's award of lost profits only. See also fn. 17 infra for a comment on the inapplicability of the contract's consequential damages exclusion clause to the jury's award of $27,080 in Freon usage costs.

forced in a court action, and thus the essence of the remedy could have been carried out.

As to the rescission remedy, Sawyer contends that there was enough evidence in the record to permit a reasonable jury to conclude that Lewis deliberately concealed the machine's inability to meet cherry processing warranties until sometime in 1972. By this time, Sawyer contends, it had made significant commitments with respect to frozen products. Sawyer further asserts that rescission and the concomitant removal of the freezer in 1972 would have been financially destructive in that it would have caused Sawyer to lose revenues and breach important commitments.

■ Having studied the record below, we believe that there was adequate evidence to support Sawyer's version as set out above. Letters and trial testimony indicate that Lewis was either unable or reluctant to promptly and effectively administer performance tests on the cherries.[5] This well could have prevented Sawyer from making an intelligent decision on rescission until 1972, by which time Sawyer had made numerous frozen product commitments. *See* Appendix at 145–147; 230–237.

We believe it was appropriate for the jury to consider these circumstances in connection with the issue of whether the rescission remedy failed of its essential purpose. Washington cases hold that an exclusive remedy fails its essential purpose where a conceded defect is not detectable until it is impractical to effectuate the exclusive remedy.[6] While the latent defect theory is most often applied in cases involving the repair remedy,[7] and while the facts of this case are not nearly as strong as Sawyer

seems to believe, we find that it was not erroneous for the district court to allow the jury to consider whether Lewis concealed the facts until such time as a rescission would have caused severe financial damages to Sawyer. And given that this factual version was true, it was within the ambit of section 2–719(2) for the jury to find that the rescission remedy failed of its essential purpose. Thus, we reject appellant's contention that the district court erred by allowing the jury to consider the evidence in this case as applied to the issue of whether the repair and rescission remedy failed its essential purpose under RCW 62A.2–719(2).

### B. Lewis's General Argument Against Consequential Damages.

Lewis next contends that, assuming arguendo that the repair and rescission remedy failed of its essential purpose, the district court should generally have prohibited the jury from awarding consequential damages. This argument is bottomed on Lewis's apparent belief that damages in breach of warranty actions are confined to the benefit of the bargain measure of damages set out in RCW 62A.2–714(2).

■ This contention is patently incorrect. RCW 62A.2–714(3) authorizes consequential damages in appropriate cases. RCW 62A.2–715(2) then provides that consequential damages from a seller's breach include losses reasonably foreseeable that cannot be mitigated by cover.

■ Cover is not an issue in this appeal. And since there is a good deal of evidence in the record indicating that the freezer was to be an important part of Sawyer's

---

**5.** *See e.g.,* app. at pp. 151–157; 162–163; 168–172; 177–178; 198–195.

**6.** *See e.g., Lidstrand v. Silvercrest Industries,* 28 Wash.App. 359, 623 P.2d 710 (1981); *Schroeder v. Fageol Motors,* 12 Wash.App. 161, 528 P.2d 992 (1974), *rev'd in part on other grounds* 86 Wash.2d 256, 544 P.2d 20 (1975). For examplar of similar decisions in other states, *see Osburne v. Bendix Hose Systems,* 29 UCC Rep. 119 (1982); *Deere Co. v. Hand,* 33 UCC Rep. 1369, 211 Neb. 549, 319 N.W.2d 434 (1982); *Jacobs v. Rosemount Dodge-Winneba-*

go, 32 UCC Rep. 456, 310 N.W.2d 71 (1981); *Stutts v. Green Ford,* 29 UCC Rep. 1241, 47 N.C.App. 503, 267 S.E.2d 919 (1980). *See also Chatlos Systems v. National Cash Register,* 30 UCC Rep. 416, 635 F.2d 1081 (CA 3, 1980).

**7.** *See generally* cases cited in fn. 6 *supra. See also* the discussion of UCC § 2–719(2) in *Marr Enterprises v. Lewis Refrigerator,* 556 F.2d 951 (CA 9, 1977). *Marr* is an important Ninth Circuit case interpreting Washington law.

production, we conclude that a reasonable jury easily could have determined that Lewis should have foreseen that its breach of warranty would cause consequential damages. *See* Appendix at 123–131, 145–146. Thus, it certainly was not erroneous for the district court to not generally preclude damages for lost profits.

C. Sawyer's Failure to Supplement Discovery Responses.

Lewis next contends that it is entitled to a new trial on the basis of Sawyer's discovery abuses. In this respect Lewis points to two general areas of abuse.

First, Lewis asserts that the damage testimony given at trial by Sawyer's comptroller differed from the testimony he gave on discovery. Lewis contends that this discrepancy was an abuse of Rule 26(e)(2) of the Federal Rules of Civil Procedure and justifies a new trial.

We readily acknowledge that Rule 26(e)(2) imposes a duty to amend and supplement prior discovery responses. Arguably, this duty was breached as to Mr. Gregg. *See Davis v. Marathon Oil,* 528 F.2d 395 (CA 6, 1975). The fact, however, is that the difference in trial testimony from that in deposition amounted to an increase in damages complained of in the amount of $4,500; i.e., it increased the damages claimed by Sawyer from a total of $112,956.08 to $117,439.81. The increase of $4,483, in view of the total, is not an amount of great significance. This is particularly true when viewed in the light of the following facts: (a) the difference was based on increases in amounts in two categories and decreases in amounts in six categories; (b) the theories of damages did not change whatsoever; (c) the changes resulted from the witnesses' recheck of his computations within a week or so of trial in which recheck he discovered the mathematical errors and communicated the same to counsel the day before trial.

While the record is not clear as to whether the trial judge in response to Lewis's objection at trial offered Lewis a continuance, Lewis did not seek a continuance even though the trial judge asked if Lewis's counsel could remedy the problem caused by the late change if he had a continuance. After evaluating this claim of Lewis we hold that any prejudice, if indeed there were any, was not significant and could not justify granting a new trial.

The second aspect of Lewis's Rule 26(e)(2) argument involves the liability testimony of Sawyer's witness, Wayne Burley. On February 15, 1978, approximately two months prior to trial, Burley made the following deposition responses to Lewis's questions regarding damages in the freezer. *See* appellant's brief at 26–27.

Q Mr. Burley, have you made an investigation yourself of what the mechanical problem may be with the machine, if you are correct in saying that it tends to overload at $4,000 pounds?

A I have only theory as to what could be the problem.

Q You have taken a look at the machine, have you not, about the question?

A Yes, many times.

Q What is your theory?

A It could be two things: the most prevalent one is that the condensing coil in the freezer box itself is of too small capacity; and the other one is that, if the coil is of sufficient capacity, then it is not being fed enough ammonia refrigerant.

Two days after the deposition, however, Burley discovered that the substitution of a different compressor filter caused the freezer to handle the warranted amount of fruit. Burley did not disclose this to Lewis and Lewis only learned of the filter substitution at trial.

The Rule 26(e)(2) duty to amend and supplement may well have allowed the trial court to sanction Sawyer for the failure to disclose the filter substitution. *See Davis v. Marathon Oil,* 528 F.2d 395 (CA 6, 1975); *Minnkota Power Co. v. Manitowic Co. v. Sanderson v. Porter Co.,* 669 F.2d 525 (CA 8, 1982). Here, however, we are asked

to grant a new trial based on the lack of supplementation. In light of the immense discretion given to trial courts on discovery matters, Lewis is required to show significant prejudice caused by the lack of supplementation. *See Myers v. Norfolk Livestock Mkt.,* 696 F.2d 555, 35 Fed.R.Serv.2d 926 (CA 8, 1982). Since Lewis has not shown such prejudice, we cannot grant a new trial based on the failure to supplement. This is particularly true as to a matter which Sawyer was not required to prove as it was not an element of Sawyer's claim.

D. District Court's Failure to Make a Separate Determination of Unconscionability Under RCW § 62A.2–719(3).

Lewis's final argument centers on the district court's treatment of the paragraph B4 exclusion of consequential damages. This paragraph excludes consequential damages apparently under the authority of RCW 62A.2–719(3), the Washington version of UCC § 2–719(3). RCW 62A.2–719(3) provides in pertinent part:

> Limitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use or of any services related thereto is invalid unless it is proved that the limitation is not unconscionable ... Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable." [8]

The district court did not give a separate instruction on the paragraph B4 consequential damages exclusion. Instead, the dis-trict court merely instructed that lost profits could be awarded.

> "if you find that circumstances not caused by Sawyer Fruit ... caused the exclusion of lost profits to deprive Sawyer Fruit of the substantial value of its bargain under the Agreement."

*See* Appendix at 562–563.

Apparently, the district court believed that if the jury determined that the exclusive repair and rescission remedy failed of its essential purpose, the exclusion of consequential damages provision automatically become unconscionable under section 2–719(3). Alternatively, the district court may have believed that the "remedy may be had as provided in the act" phrase of RCW 62A.2–719(2) authorizes all UCC damages—including consequential damages—upon a finding of unconscionability.

While a number of courts have taken the general approach of the district court,[9] a larger number of courts—including the Courts of Appeals of the Third and Ninth Circuits—have construed subsection (3) of UCC 2–719 as the governing provision on the issue of consequential damages.[10] We believe that this is the correct approach.

In arriving at this conclusion, we are mindful that Washington law governs this case. And while the Washington appellate courts have not squarely decided this issue, it is notable that in 1955 the Washington Supreme Court indicated that analogous provisions in the Uniform Sales Act should be dealt with separately and distinctly. *See Ketel v. Hovich,* 47 Wash.2d 368, 287 P.2d 739 (1955). Furthermore, for several reasons, we believe that sound statutory construction leads to the conclusion that sub-

---

**8.** The text of RCW § 62A.2–719(3) differs slightly from UCC § 2–719(3). The two statutes are, however, almost identical in that consequential damages are prima facie unconscionable as applied to consumer goods—but not as applied to commercial goods.

**9.** *See e.g., Deere v. Hand,* 33 UCC Rep. 1367, 211 Neb. 549, 319 N.W.2d 434 (1982); *KKO Inc. v. Honeywell,* 517 F.Supp. 892 (N.D.Ill., 1981); *Soo Line RR Co. v. Fruehauf,* 547 F.2d 1365 (CA 8, 1977); *Bosway Tool & Steel Co. v. Michigan Machine Co.,* 65 Mich.App. 426, 237 N.W.2d 488 (1976).

**10.** *See Chatlos Systems v. National Cash Register Co.,* 635 F.2d 1081 (CA 3, 1980); *S.M. Wilson & Co. v. Smith International,* 587 F.2d 1363 (CA 9, 1978). *See also Excavation Constr. v. Mack Trucks,* 31 UCC Rep. 1386 (D.C.Md.1981); *Williams v. Hyatt Chrysler,* 30 UCC Rep. 90, 48 N.C.App. 308, 269 S.E.2d 184 (1980); *Johnson v. Deere,* 31 UCC Rep. 992, S.D., 306 N.W.2d 231 (1981). *Garden State Food Distribution v. Sperry Rand,* 512 F.Supp. 975 (D.C.N.J.1981); *Stutts v. Green Ford,* 29 UCC Rep. 1241, 47 N.C.App. 503, 267 S.E.2d 919 (1980).

section (3) of RCW 62A.2–719 must be viewed as the governing provision on the issue of consequential damages exclusion.

In this respect it should first be noted that, absent the specific language of subsection (3), the general language of subsection (2) would seem to cover the issue of consequential damages. Since it is a basic principle of statutory construction that the particular governs over the general,[11] we believe that the section 2–719 drafters intended subsection (3) to deal with the issue of consequential damages.

Second, the distinctly different substantive content of subsections (2) and (3) must be considered. Subsection (2) turns on the failure of essential purpose; subsection (3) turns on a judicial determination of unconscionability.[12] Unconscionability deals with grossly unequal bargaining power at the time of the contracts formation. As numerous decisions have pointed out, unconscionability rarely exists unless the buyer is a consumer.[13] Indeed, the consumer orientation of subsection (3) is reflected in the subsection's different allocations of proof. Where the transaction involves a consumer buyer, the limitation is

prima facie unconscionable. Where the transaction does not involve a consumer, however, the exclusion of consequential damages is not prima facie unconscionable.

Thus, subsection (3) is a powerful provision designed to protect against abuse of consumers in contract formation.[14] The Official UCC comment to UCC 2–719(3)[15] indicates, however, that another basic purpose of subsection (3) is to allow merchants to allocate business risks.[16] This purpose is consonant with the general UCC philosophy of freedom in commercial transactions.[17] Taking these two statutory policies together, we believe that section 2–719(3) is meant to allow freedom in excluding consequential damages unless a consumer is involved in the contract. This freedom would be abridged by the sweeping interpretation of subsection (2) applied by the district court.

We thus hold that the district court had an obligation to take evidence and then determine whether the consequential damages exclusion clause was unconscionable. In the absence of an unconscionability determination, the district court should have allowed the paragraph B2 consequential damages exclusion to stand.[18]

**11.** *See Roth Steel Products v. Sharon Steel Co.,* 705 F.2d 134, 141 (CA 6, 1983).

**12.** RCW 62A.2–302(2) provides that the court determines whether a contract or any clause thereof is unconscionable. Prior to such a judicial determination, "the parties shall be afforded a reasonable opportunity to present evidence as to [the contract's] commercial setting, purpose and effect to aid the court in making the determination." Clearly section 2–302 mandates that the *court* is to determine the unconscionability issue. *See Jeffery v. Weintraub,* 32 Wash.App. 536, 648 P.2d 914 (1982); *Brem Rock v. Warnack,* 28 Wash.App. 483, 624 P.2d 220 (1981); *Northwest Acceptance Corp. v. Hesco Construction,* 26 Wash.App. 823, 614 P.2d 1302 (1980). *See also* the Official Comment to UCC section 2–302.

**13.** *See e.g., Northwest Acceptance Corp. v. Hesco,* 26 Wash.App. 823, 614 P.2d 1302 (1980); *Argo Welded Products v. Ryerson Steel,* 528 F.Supp. 583 (E.D.Pa., 1981); *Phillips Machinery v. LeBlond, Inc.,* 494 F.Supp. 318 (N.D.Okl., 1980); *Excavation Constr. v. Mack Trucks,* 314 UCC Rep. 1386 (D.C.Md.1981).

**14.** *See generally, Fischer v. General Electric Hotpoint,* 31 UCC Rep. 849, 108 Misc.2d 683,

438 N.Y.S.2d 690 (1981); *Durham v. Ciba-Geigy Co.,* 33 UCC Rep. 588, S.D., 315 N.W.2d 696 (1982).

**15.** RCW 62A.2–719(3) is but a slightly changed version of UCC § 2–719(3). Thus, the policy concerns underlying RCW 62A.2–719(3) are basically the same as the policy concerns underlying UCC § 2–719(3). *See generally Lidstrand v. Silvercrest Industries,* 28 Wash.App. 359, 623 P.2d 710 (1981).

**16.** *See generally Phillips Machinery Co. v. LeBlond, Inc.,* 494 F.Supp. 318 (N.D.Okl., 1980).

**17.** *See generally Bunn, Freedom of Contract Under the Uniform Commercial Code,* 2 DC Ind. & Comm.L.Rev. 59 (1960).

**18.** Appellee has also indicated that the district court's treatment of the consequential damages exclusion clause should stand because the typewritten portion of the agreement controls over the printed portion of the agreement. *See* appellee's brief at pp. 8–9. While we agree with the basic premise as to typewritten portions of agreements versus printed portions, we believe that the provision is inapplicable here. Noth-

Accordingly, we must vacate the portion of the judgment reflecting the jury's award of $25,283 in lost profits and remand this case to the district court for a judicial determination of whether the consequential damages exclusion clause was unconscionable. In the event the district court determines that the consequential damages clause was not unconscionable, the jury's award of $25,823 in lost profits must be voided.[19]

## III CONCLUSION AND ORDER

We hereby affirm the district court as to the issues discussed in Parts IIA—IIC of the foregoing Opinion. We hereby VACATE the jury's award of $25,823 in lost profits and REMAND to the district court for the reasons stated in part IID of this Opinion. On remand, the district court is to conduct the proceedings specified in part IID of this Opinion.

ing in the typewritten portion of the agreement provided that consequential damages were available. The typewritten portion of the agreement merely added warranties. *See id.* Since the typewritten portion of the agreement did not conflict with the printed portion of the agreement as to the consequential damages limitation, the appellee's appellant's argument must be rejected.

19. The jury's award of $27,080 in Freon costs should not be disturbed even if the consequential damages limitation is upheld. This is because the Freon costs are incidental damages rather than consequential damages. *See Lewis v. Mobil Oil Corp.,* 438 F.2d 500 (CA 8, 1971). *See generally* White & Summers, *Uniform Commercial Code,* pp. 312–314.