914 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Brenda DICUS, William Dicus, Plaintiffs-Appellees,
v.
Harold D. LAIPPLY, Defendant-Appellant.
 No. 89-3365.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1990.
 
 Before BOYCE F. MARTIN and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This diversity tort action under Ohio law stems from an automobile accident on January 23, 1985 involving the defendant, Harold Laipply, and the plaintiffs, Brenda Dicus and William Dicus. Mr. Laipply was driving on State Route 19 between Galion, Ohio, and Bucyrus, Ohio when he attempted to pass a van driven by Ms. Dicus. The road was icy and Mr. Laipply's car slipped and slid into the van. Ms. Dicus's husband, William Dicus, was in the car with her during the accident. On appeal, Mr. Laipply does not contest that he negligently caused the accident, but he challenges the jury's award of damages for injuries to Ms. Dicus.
 
 
 2
 Immediately after the accident, Ms. Dicus's only visible injury was a bruise on her hip. She was able to get out of the van and walk a short distance. Ms. Dicus's pain increased that evening, and the Dicuses went to the Bucyrus Hospital Emergency Room. Ms. Dicus complained mainly of pain in her neck and lumbosacral spine. Ms. Dicus underwent disc surgery on July 1, 1985, performed by Dr. Juan Segarra-Vidal.
 
 
 3
 Ms. Dicus again saw Dr. Vidal for pain in her lower back and legs on August 1, 1985. More testing ensued and led to a second surgery to remove a herniated disc on November 19, 1985. After this operation, Ms. Dicus's health improved, and by April 1, 1986, she was swimming and engaging in physical fitness programs.
 
 
 4
 In May 1986, Ms. Dicus moved to Florida, where she began to see Dr. Glenn Rechtine, an orthopedic surgeon, on August 25, 1986 because of pain in her lower back, hip, thigh, calf, and foot. Dr. Rechtine diagnosed Mr. Dicus's condition as L5 radiculopathy with a permanent left foot drop. In September 1986, Ms. Dicus was in another automobile accident in which she pulled muscles in her lower back. Ms. Dicus continued to see Dr. Rechtine until April 14, 1987.
 
 
 5
 The Dicuses filed suit against Mr. Laipply on May 21, 1987, and a jury trial took place from November 19, 1989, to December 2, 1989. The jury returned a verdict in favor of Ms. Dicus in the amount of $220,000, and in favor of William Dicus in the amount of $30,000.
 
 
 6
 On appeal, Mr. Laipply alleges three errors by the district court and seeks a new trial on damages. Mr. Laipply first contends that the district court erred by denying his motion for a new trial on the basis of excessive damages. Fed.R.Civ.P. 59. A district court's refusal to grant a motion for a new trial on grounds of excessive damages is not reversed unless it amounts to an abuse of discretion. Sykes v. McDowell, 786 F.2d 1098 (11th Cir.1986); Nairn v. National R.R. Passenger Corp., 837 F.2d 565 (2d Cir.1988).
 
 
 7
 Mr. Laipply asserts that Ms. Dicus failed to introduce sufficient medical evidence of causation of her injuries to support an award of damages to compensate for them. In this diversity case, Ohio law governs the question of sufficiency of the evidence of causation of Ms. Dicus's damages. Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 813 (6th Cir.1982). Ohio law requires that a plaintiff must introduce medical testimony that a personal injury more likely than not was caused by the defendant's negligence. Darnell v. Eastman, 23 Ohio St.2d 13, 17, 251 N.E.2d 114 (1970); Yung v. Raymark Industries, 789 F.2d 397, 399 (6th Cir.1986) (applying Ohio law). Ms. Dicus introduced the testimony of three doctors to show that her injuries were caused by the accident with Mr. Laipply. On cross examination by Laipply's counsel, Dr. Vidal testified:
 
 
 8
 [T]he injury that she suffered in the accident was the contributing cause of her problems because prior to that she had led a life without requiring medical care, hospitalization, painful extensive testing and surgery two times to carry on with life, so I have to assume that something happened at that point in time that changed, if you would, the normal decay of our spines through our life. Something happened that accelerated that or changed it. Suddenly an acute injury took place that made things quite different for her.
 
 
 9
 Dr. Rechtine and Dr. George Waylonis, Ms. Dicus's rehabilitation specialist, corroborated Dr. Vidal's testimony that the 1985 collision caused Ms. Dicus's injuries. This evidence meets the Ohio causation standard.
 
 
 10
 Mr. Laipply next challenges the district court's decision to permit the testimony of Dr. Rosen as an expert witness on the necessity of Ms. Dicus's treatment and the reasonableness of her medical expenses. Mr. Laipply did not know that Dr. Rosen would testify until the third day of the four day trial because the Dicuses did not list Dr. Rosen as a witness before trial. Mr. Laipply argues that his defense was prejudiced because he did not have adequate time either to prepare a cross-examination or to find a rebuttal witness to challenge Dr. Rosen's assertions.
 
 
 11
 A trial court has broad discretion in deciding whether to let a witness testify, and the opposing party must show significant prejudice or surprise by the failure to timely disclose witnesses. Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co., 709 F.2d 427, 434 (6th Cir.1983). In this case, we recognize that Mr. Laipply was surprised by the appearance of Dr. Rosen as a new witness. On the other hand, Mr. Laipply had notice well in advance of trial regarding the medical costs that the Dicuses were planning to claim as damages. This notice gave Mr. Laipply plenty of time to prepare evidence and find witnesses to rebut Ms. Dicus's claims that these medical expenses were necessary and reasonable. We also note that the Dicuses did not intend to deceive the defense by hiding Dr. Rosen as a witness; the Dicuses believed before trial that they could put on their evidence in other ways. Without expressing any approval for the lack of advance notice given to Laipply, we find that the district court did not abuse its discretion in this case by allowing Dr. Rosen to testify.
 
 
 12
 Finally, Mr. Laipply argues that the district court erred by allowing Dr. Rosen to answer a hypothetical question as to the necessity of the extent of her medical treatment received. In the question, the Dicuses' attorney asked Dr. Rosen to assume that Dr. Vidal, Dr. Waylonis, and Dr. Rechtine had testified that the accident with Mr. Laipply was the cause of Ms. Dicus's ruptured disc. Based on those assumptions, Dr. Rosen was asked whether the medical treatment received by Ms. Dicus was necessary, and he answered that it was. Mr. Laipply contends that this hypothetical question was improper because its underlying basis was incorrect. As Dicussed above, we believe that Dr. Vidal, Dr. Waylonis, and Dr. Rechtine testified in support of the causation. Therefore, the hypothetical question and answer did not constitute error.
 
 
 13
 Although we reject each of Mr. Laipply's claims, we find that they were not frivolous, and we refuse to award the Dicuses' request for damages under Fed.R.App.P. 38. The judgment of the district court is affirmed.