# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SKYLER WALDAL, a single person,<br><br>    Appellant,<br><br>    v.<br><br>KEYSTONE RV COMPANY, a foreign corporation,<br><br>    Respondent,<br><br>CURTIS TRAILERS, INC., an Oregon corporation; TRUCK TRAILS NORTHWEST, LLC, a Washington company; NUMERICA CREDIT UNION, a Washington corporation; and WESTERN SURETY, a foreign corporation,<br><br>    Defendants. | DIVISION ONE<br><br>No. 83064-3-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Skyler Waldal appeals from the summary judgment dismissal of his claims against the manufacturer of his recreational vehicle (RV), Keystone RV Company. Summary judgment was inappropriate, Waldal argues, because genuine disputes of material fact existed concerning whether and how Keystone fulfilled the terms of the RV's limited warranty and whether those methods violated two statutes. Finding no error, we affirm.

I

Skyler Waldal purchased a 41-foot long, triple-axle RV from Curtis Trailers in Oregon on August 4, 2016.[1]  The $75,000 RV came with an express, limited warranty from manufacturer Keystone RV Company.  Waldal read and signed the warranty when he took possession of the RV.  To obtain service under the warranty, Waldal was required to bring the RV to Curtis or, if not feasible, to another dealer or service center recommended by Keystone.  Waldal had no questions about the warranty's terms.  He hitched the RV to his truck and drove it home to Snohomish County without incident.

The following day, he took the RV on a three-day trip to Central Washington.  This, too, was without incident except when he returned home and felt the tires on the RV's rear axles rubbing together while pulling into his driveway.  Waldal called Keystone about the tire issue in early September.  Keystone told Waldal to contact Curtis or another authorized dealer for service.  Waldal contacted a local authorized dealership and was told to bring the RV to Curtis for service.  Waldal responded by ending the call.

---

[1] We note that Waldal's briefing fails to comply with basic procedural requirements.  First, substantial portions of the record designated and relied on by Waldal were not considered by the trial court on summary judgment.  When reviewing a summary judgment order, we "consider only evidence and issues called to the attention of the trial court on summary judgment."  Winters v. Quality Loan Serv. Corp. of Wash., Inc., 11 Wn. App. 2d 628, 646, 454 P.3d 896 (2019) (citing RAP 9.12; Kofmehl v. Baseline Lake, LLC, 177 Wn.2d 584, 594, 305 P.3d 230 (2013)).  Waldal appeals and assigns error to only the trial court's initial summary judgment decision.  Thus, we decline to consider portions of the record not before the trial court when it entered summary judgment.  Winters, 11 Wn. App. 2d at 646.  Second, Waldal cites as precedential an unpublished 2006 decision from this court despite the prohibition in GR 14.1(a) on doing so.  Third, while not explicitly required by RAP 10.3(a), we note that Waldal's briefs fail repeatedly to properly cite cases, for instance, his repeated use of a short cite on first reference to a case.  While this third problem does not affect our analysis, we note it to encourage the accuracy of any future submissions to this court.

Waldal contacted Curtis, which told him to bring the RV to Truck Trails, an unauthorized RV repair shop in Snohomish County, for service. He towed the RV there. Although a repair was made, Truck Trails' employees were not able to fix the main problem with the RV. They believed the RV should be brought to one of Keystone's manufacturing facilities for service and could be safely transported there on a flatbed truck.

After this repair, Waldal attempted a wintertime snowmobiling trip with his RV, giving up due only to road conditions. He noticed the tires rubbing together when he got back home. Waldal contacted Keystone again and was told to bring his RV to an authorized dealer. He did not want to tow the RV to Curtis in Oregon because of his concerns about the tires rubbing. Other than his lone visit to Truck Trails, Waldal never brought the RV in for service.

On February 8, 2017, Waldal wrote a letter "to put you, Keystone RV Company on [n]otice" and demanded "replac[ment] [of] the unit with a brand new one or give me my money back." He stated a defect in the suspension "causes the tires to rub and lock up," risking severe injury or death if the RV skidded. He threatened "legal action" if Keystone did not respond within "10 working days."

Keystone's employees contacted him seven days later. Keystone said it needed more information, including the RV's location, to address his concerns. In February, March, and April, Keystone repeatedly asked for the RV's location. Waldal did not provide its location until April 27.

On September 7, 2017, Keystone's products manager, Matt Gaines, flew from Indiana to Washington to personally inspect the RV. This was the first time

3

a Keystone employee had an opportunity to inspect the RV. In early November, Waldal received a letter from Keystone offering to transport his RV to Keystone's Oregon manufacturing facility to repair "any defects" related to his complaint about the tires rubbing together. Waldal did not accept the offer.

A few weeks later, Waldal filed suit against Keystone. Among other claims, he alleged Keystone breached the warranty and violated Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. Ultimately, Keystone moved for summary judgment. As to the warranty claim, it argued that no breach occurred because Waldal "failed to afford himself [of] the remedies available to him under the Limited Warranty provided for by Keystone." It contended that the CPA claim warranted dismissal because Waldal failed to demonstrate that Keystone committed an unfair or deceptive act. And it sought dismissal of an "Auto Dealers Act" claim listed in the complaint caption and mentioned in passing in a request for remedies. The court agreed with Keystone and granted summary judgment on all claims.

Waldal appeals.

## II

Waldal limits his appeal to dismissal on summary judgment of three allegations: breach of express warranty, violation of the auto dealers act, chapter 46.70 RCW, and a CPA claim. We address each in turn.

## A

We review a trial court's grant of summary judgment de novo. Dobson v. Archibald, 21 Wn. App. 2d 91, 96, 505 P.3d 115 (2022). We engage in the same

inquiry as the trial court. Dobson, 21 Wn. App. at 96 (citing Benjamin v. Wash. State Bar Ass'n, 138 Wn.2d 506, 515, 980 P.2d 742 (1999)). Summary judgment is appropriate when the movant is entitled to judgment as a matter of law and there is no genuine issue of material fact. Dobson, 21 Wn. App. at 96 (citing Clements v. Travelers Indem. Co., 121 Wn.2d 243, 249, 850 P.2d 1298 (1993); CR 56(c)). We review the evidence in a light most favorable to the nonmoving party. Dobson, 21 Wn. App. at 96 (citing Overton v. Consol. Ins. Co., 145 Wn.2d 417, 429, 38 P.3d 322 (2002)). Despite this favorable review, summary judgment remains appropriate when an alleged factual dispute is based "on speculation or on argumentative assertions that unresolved factual issues remain." White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997); see CR 56(e) (requiring the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

B

Waldal contends that the trial court erred by granting summary judgment on his claim for breach of warranty because, "[m]ore than sixteen months after the purchase of the RV and the filing of the complaint, Keystone still had not provided a warranty remedy." Reply Br. of Appellant at 23. We disagree.

The terms of the express warranty are plain and undisputed by the parties. The express warranty is contained in the RV owner's manual, which Waldal received and read when he took delivery of the RV. Chapter one of the manual is entitled "How to Obtain Service." It states that "[t]he Keystone dealer network is the exclusive provider of Parts, Service and Warranty for Keystone RV." An

owner must "[m]ake an appointment to return the unit, at your expense, to your selling dealer for the necessary service." If unsuccessful, then the owner must contact Keystone for service, and

> Keystone may then direct [him] to another dealer or service center for the repairs to be completed. Keystone may, at its option, request that the [RV] be returned to one of its Customer Service facilities in Goshen, Indiana or Pendleton, Oregon where Keystone RV will repair or replace any parts necessary to correct defects in material or workmanship . . . . If the dealer is unable to correct any covered defects that you believe substantially impairs the value, use or safety of your [RV], you must . . . notify Keystone directly of the failure to successfully repair the defect(s) so that Keystone can become directly involved for the purpose of performing a successful repair to the identified defect(s).

Keystone attempted to fulfill these promises. Waldal believed transporting his RV to Curtis was unsafe because of the alleged defect, so he notified Keystone. Keystone sought the location of the RV and other information so it could provide service. After he finally revealed the RV's location months later, Keystone sent an employee from Indiana to Waldal's home in Washington for a multihour inspection of the RV. It is undisputed that this was Keystone's first inspection opportunity. Two months later, Keystone sent Waldal a letter "offering to transport your [RV] to Pendleton, Oregon to allow Keystone the opportunity to diagnose and repair any defects related to this complaint." Waldal understood that Keystone would bear all related expenses. Keystone's offer conformed to its obligations under the warranty. Waldal did not accept the offer.

Rather than explain how this offer did not comply with its warranty obligations, Waldal argues that Keystone's offer is inadmissible under ER 408 because it was part of a settlement negotiation. ER 408 limits admissibility of evidence "offering . . . a valuable consideration in compromising or attempting to

compromise a claim which was disputed as to either validity or amount." But Waldal ignores that Keystone's offer was made before any claim existed. At that time, there were neither parties to a lawsuit nor any claim to settle. And Keystone told Waldal that it was "not seeking a release in exchange for an opportunity to diagnose and repair the unit" because it was "simply seeking an opportunity to try and get [him] back to full use of his unit." ER 408 does not bar our consideration of Keystone's offer.

Waldal avers that Keystone's unreasonable delays caused the warranty's essential purpose to fail, making summary judgment inappropriate. Assuming (without deciding) that the remedy here was exclusive and limited, it is true that an "exclusive limited remedy fails of its essential purpose when there are unreasonable delays in providing the remedy." Am. Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 228, 797 P.2d 477 (1990) (citing Lidstrand v. Silvercrest Indus., 28 Wn. App. 359, 365, 623 P.2d 710 (1981)). But Waldal fails to recognize an exclusive limited remedy's essential purpose does not fail "[w]hen there are alternate exclusive limited remedies, such as repair or refund . . . although there was a failure to repair or replace the defective parts." Am. Nursery Prods., Inc., 115 Wn.2d at 229 (citing Marr Enters., Inc. v. Lewis Refrigeration Co., 556 F.2d 951, 955 (9th Cir. 1977)). The remedy of repair was offered, and Waldal declined it. Without more, Waldal fails to show the five-month gap between April 27, 2017—when Waldal finally gave Keystone the information it needed to begin attempting to fulfill the warranty's terms—and

7

November 16, 2017—when Keystone made its offer—caused the warranty's essential purpose to fail.

On the undisputed record, Waldal fails to show that the trial court erred by concluding that granting summary judgment was appropriate on his claim for breach of warranty.

C

Waldal next contends that the court improvidently granted summary judgment on his claim under the auto dealers act because Keystone delayed warranty repairs. For its part, Keystone responds that summary judgment was appropriately granted because Waldal failed to develop this claim before the trial court.

RAP 2.5(a) provides us discretion to refuse review of any error raised for the first time on appeal. And on review of summary judgment under RAP 9.12, "[i]ssues and contentions neither raised by the parties nor considered by the trial court . . . may not be considered for the first time on appeal." Green v. Normandy Park Riviera Section Cmty. Club, Inc., 137 Wn. App. 665, 687, 151 P.3d 1038 (2007) (citing cases). However, contrary to Keystone's contention, the trial court did consider this argument on summary judgment because Keystone raised it. Thus, we will consider the merits of Waldal's contention.

However, our consideration does not auger success for Waldal because, as Keystone argued to the trial court, he failed to comply with the basic pleading requirements of CR 8. CR 8 requires only "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment

for the relief to which the pleader deems the pleader is entitled." "'A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests.'" FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 865-66, 309 P.3d 555 (2013) (internal quotation marks omitted) (quoting Kirby v. City of Tacoma, 124 Wn. App. 454, 470, 98 P.3d 827 (2004)).

Waldal's complaint fails to surmount these low hurdles. It lists the "Auto Dealers Act" in the case caption. It requests "injunctive relief" and "all relief" under the auto dealers act as a remedy. However, his complaint does not state a legal or factual basis for relief. At best, Waldal elucidated some explanation as to the basis of his claim in his attorney's subjoined declaration to his summary judgment response. Notably, even if it could be seen as providing notice under CR 8, this declaration was later withdrawn. Accordingly, Waldal failed to satisfy the basic pleading requirements of CR 8. FutureSelect, 175 Wn. App. at 865-66 (quoting Kirby, 124 Wn. App. at 470). The trial court did not err by granting summary judgment on this claim.

D

Waldal next argues that summary judgment was inappropriately granted on his CPA claim, either because Keystone violated the auto dealers act or because he alleged a standalone consumer protection violation. We disagree.

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."

<u>Panag v. Farmers Ins. Co. of Wash.</u>, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)). Although an established violation of the auto dealers act satisfies the first three elements of a CPA claim, <u>see</u> RCW 46.70.310 ("Any violation of this chapter is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW."), he failed to state such a claim. Thus, he is left to allege an independent violation of the CPA.

Keystone violated the CPA, Waldal avers, because it required that he "endanger himself and others, simply to obtain the benefit of the warranty." Br. of Appellant at 39. As discussed, Waldal is incorrect.

Keystone offered to transport and repair his RV at no cost to him. Waldal did not accept this offer. And, contrary to Waldal's argument, the warranty anticipated the possibility that an RV may be unsafe to transport by providing for the owner to "notify Keystone directly of the failure to successfully repair the defect(s) so that Keystone can become directly involved for the purpose of performing a successful repair to the identified defect(s)." After Waldal provided Keystone with the information it required to become directly involved, it offered to transport his RV. Waldal cites no authority showing that the five-month gap between involvement and offer was unfair or deceptive.[2]

It is undisputed that Waldal did not accept Keystone's offered performance of its warranty obligations. He fails to demonstrate that the warranty's terms

---

[2] For the first time in his reply brief, Waldal asserts Keystone's "Call Center Is Deceptive and Unfair." Reply Br. of Appellant at 14. Waldal fails to provide any argument, authority, or explanation about how the call center violated the CPA.

themselves violate the CPA or that Keystone engaged in an unfair or deceptive act or practice by offering to fulfill the warranty's terms. Because summary judgment is appropriate "[w]here there is 'a complete failure of proof concerning an essential element of the nonmoving party's case,'" Fischer-McReynolds v. Quasim, 101 Wn. App. 801, 808, 6 P.3d 30 (2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), Waldal fails to show the trial court erred by entering summary judgment on his CPA claim.

We affirm the trial court's grant of summary judgment to Keystone.[3]

WE CONCUR:

---

[3] Both Waldal and Keystone request attorney fees on appeal. Both fail to identify a basis in law, contract, or equity for such an award, which RAP 18.1(b) requires. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998) (citing Austin v. U.S. Bank of Wash., 73 Wn. App. 293, 313, 869 P.2d 404 (1994)). As neither party makes "more than a bald request for attorney fees on appeal," neither is entitled to an award of attorney fees under RAP 18.1. Wilson Court Ltd. P'ship, 134 Wn.2d at 710 n.4 (citing Thweatt v. Hommel, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992)).

11