ENVIROTECH CORPORATION

v.

HALCO ENGINEERING, INC.

Record No. 841342

HALCO ENGINEERING, INC.

v.

ENVIROTECH CORPORATION

Record No. 841325

January 15, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Thomas, and Whiting, JJ., and Cochran, Retired Justice

584

*Joanne F. Alper (Harvey B. Cohen; Thomas E. Spahn; Cohen, Gettings, Alper and Dunham; McGuire, Woods & Battle*, on briefs), for appellant. (Record No. 841342)

*Thomas R. Nedrich* for appellee. (Record No. 841342)

*Thomas R. Nedrich* for appellant. (Record No. 841325)

*Joanne F. Alper (Harvey B. Cohen; Thomas E. Spahn; Cohen, Gettings, Alper and Dunham; McGuire, Woods & Battle*, on briefs), for appellee. (Record No. 841325)

COMPTON, J., delivered the opinion of the Court.

In this controversy arising under the Uniform Commercial Code — Sales (UCC), Code § 8.2-101 *et seq.*, the dispositive question on appeal deals with the validity and enforceability of contractual provisions that limit the buyer's remedy for recovery of consequential damages.

In 1978, Arlington County contracted for a multimillion dollar expansion of the County's sewage treatment facilities. Specifically, the County proceeded to construct a Water Pollution Control Plant including a Biological Sludge Processing Building. The new facility would receive raw sewage, treat it with chemicals, and remove solids from the water by pressurized filtration. This process produces cakes of dried sludge which are shredded and burned in an incinerator in the building. The heat produced by the incinerator is recovered and converted into supplementary electrical power for the facility.

In 1978, the general contractor, John W. Cowper Company, awarded a subcontract to Halco Engineering, Inc., the plaintiff below, to perform the mechanical work connected with the construction of the facility. Under that agreement, Halco, an experienced contractor, generally was responsible for procurement,

erection, and installation of equipment and associated piping for the plant.

Later in 1978, Halco awarded a subcontract to Envirotech Corporation, the defendant below. Envirotech was a manufacturer of sophisticated filtration equipment with considerable experience in the waste treatment industry. Under that agreement, the major pieces of equipment to be supplied by defendant were four filter presses, to compress and remove the water from raw sewage; four cake hoppers into which compressed sewage cakes were dropped; four cake breakers to grind the cakes into smaller particles; and four drive conveyers to carry the pulverized material for incineration. Other equipment supplied by Envirotech included blenders to mix the sludge with treating chemicals at the beginning of the process, plus conditioning tanks and chemical storage tanks. Most of the foregoing components were the source of the dispute between the parties. Although Envirotech had no responsibility for installation of the equipment, it had a duty to assist in "start-up" of the equipment and to train operators of the units.

The agreement between the parties, in which defendant was to be paid $850,000, was embodied in a series of letters with enclosures and a purchase order dated July 12, 1978. The following terms and conditions of the parties' agreement generated this controversy. Under the heading "Shipments and Delivery," the agreement provided

> "Seller shall have no liability to Purchaser for damages or penalties, direct or indirect, for any delay in shipment or delivery, whether such delay is minor or substantial, nor shall Purchaser have the right to declare a breach of contract because of any such delay."

Under the heading "Limitation of Liability," the contract provided

> "Seller shall not be liable to Purchaser for any incidental or consequential damages for any reason whatsoever, including, but without limitation, damages in the character of (a) loss of profits or revenues resulting from the failure of the equipment to meet specifications or warranties, (b) damages suffered by Purchaser as a result of loss of production facilities or equipment, (c) cost of replacement equipment, (d) damages suffered by customers of Purchaser, or (e) any fines or

penalties assessed for failure to comply with any law or governmental regulations."

The completion date of the prime contract was originally fixed as November 10, 1980. The project was not completed on time and, by agreement between the owner and the general contractor, the date of completion was extended to December 31, 1982. Halco commenced work in May of 1978 and at the time of trial in January-February 1984 had not finished work under its contract with the general contractor.

In May 1982, Halco filed the present action against Envirotech seeking recovery in damages for $450,000, later amended to $843,081. Halco alleged that defendant failed to perform its contract in a timely manner. The plaintiff alleged that, under the contract, defendant was obligated to deliver all equipment and perform all services by January 1979, in accordance with the plans and specifications for the project. The plaintiff alleged that defendant's delays were so material and so unreasonable under the agreement as to vitiate it. Halco further alleged that as the result of the delays and the defendant's failure to perform, the plaintiff had been delayed materially in the performance of its contract with Cowper. In consequence, the plaintiff alleged certain additional costs were incurred.

Halco claimed damages consisting of costs for office overhead, field supervision, tools and equipment, labor, and financing which the plaintiff asserted it incurred because it had to remain on the job site past November 10, 1980. Although the plaintiff has maintained at times during this litigation that the damages claimed were direct and not consequential, counsel for Halco confirmed during oral argument that the damages sought by the plaintiff "may be fairly characterized as consequential under the UCC." See Code § 8.2-715(2).

Envirotech responded to the plaintiff's allegations by denying it was obligated in any amount. In addition, the defendant filed a counterclaim seeking judgment against the plaintiff for the sum of $96,314, allegedly due for equipment delivered pursuant to the agreement with Halco.

In a seven-day jury trial, the plaintiff obtained a verdict against the defendant for $428,554. The jury denied recovery on the counterclaim. Subsequently, the trial court overruled Envirotech's motion to set aside the verdict on the main claim and entered judg-

ment on the verdict in favor of Halco. But the trial court granted Envirotech's motion to set aside as to the counterclaim and entered judgment in favor of the defendant against the plaintiff for $96,314. We awarded the parties separate appeals and consolidated them for oral argument.

A detailed recitation of the extensive evidence is not necessary in order to set the background for discussion of the central issue in this dispute. In essence, the plaintiff claimed that defendant represented itself as capable of supplying highly specialized sludge filtration equipment in accordance with the specifications fixed for the project by the consulting engineer. In spite of this representation, Halco contended, Envirotech failed to meet a fixed schedule for delivery of the equipment. Halco presented evidence that defendant had not completed its contractual obligations by delivering equipment by early 1979, or by November 1980, which was Halco's completion date under its contract with Cowper, or by December 15, 1982, the date through which Halco claimed money damages from Envirotech.

In addition, the evidence showed that the plant was designed to be an integrated, closed-loop system in which each piece of equipment had to fit, had to be compatible with other components, and had to perform in accordance with design specifications. Any failure of a component to operate as specified would affect adversely the entire unitary system. Halco presented evidence that Envirotech shipped unassembled pieces of equipment with incomplete sets of component parts. In addition, the plaintiff showed that major items failed to meet contract specifications. The plaintiff's field superintendent analogized the situation to ordering a customized automobile shipped in component parts with enclosed instructions for assembly. He testified, "When we received it and opened up the box, number one, there were no assembly instructions in the box. Number two, we found out that we had what appeared to be the front end of a Lincoln Continental and the back end of part of a tractor-trailer."

Halco's witnesses described in detail how each particular piece of equipment failed to meet specifications and the work Halco was required to perform to correct the perceived problems. For example, Halco showed that the filter press, conveyor, and cake breaker systems were to be driven with 500-pound electric motors with a single motor control system, according to the specifications. In-

stead, defendant delivered 3000-pound hydraulic motors causing Halco to redesign the entire electrical system.

According to Halco's evidence, defendant's failure to meet the time and equipment requirements caused Halco to seek replacement equipment elsewhere. No other source of supply was available to produce the highly specialized equipment. Thus, according to Halco, it was forced to continue to deal with the defendant and, in the process, Halco began to withhold payments to Envirotech. The defendant then stopped making deliveries. Eventually, the parties modified their agreement and defendant began making delivery on a COD basis but Halco refused to pay the entire balance defendant claimed to be due. That issue formed the basis for the counterclaim.

Halco sought to establish that, because of Envirotech's refusal and failure to perform, it became necessary for the plaintiff to remain on the project through 1981 and 1982, beyond its contracted 1980 completion date. Halco calculated its damages during this period as totaling $534,101, consisting of overhead costs, superintendent costs, tool and equipment costs, specified dollar costs for extra labor, material and services from third parties, and interest on money borrowed by Halco to fund this extra work.

Envirotech presented evidence that the entire project experienced delays, not attributable to the defendant, from the very beginning of construction. For example, there was evidence that excavation of the site was delayed and that the structural steel for the new building had to be redesigned. Also, there was evidence that modifications were necessary to the main control panel, the waste heat boiler, and steam piping. Envirotech claimed that, because of many modifications for which it was not responsible, all subcontractors, including the plaintiff, had to do additional work on the project. This extension of the work schedule caused Arlington County and Cowper to agree to a change of the contract completion date from November 1980 to December 1982, although Halco was not a party to that agreement.

In addition, Envirotech claimed that essentially all the equipment it was required to provide had been shipped by the Spring of 1980, although Halco refused to make full payment for it. Envirotech presented evidence that, after the controversy developed when defendant stopped making further deliveries, it completed delivery of all items by March 1982, yet Halco refused to pay the $96,314 due under the agreement.

Also, Envirotech sought to prove that its contract with Halco contained no specific schedule for delivery of the equipment, only estimated delivery dates. Nonetheless, defendant claimed, the "major and critical equipment" was shipped and available for installation before it was needed for incorporation into the project. For example, defendant showed that the filter presses were delivered and stored in a warehouse, unused, for a period of two years.

On the subject of nonconforming equipment, Envirotech's evidence showed that where the items deviated from the specifications, these deviations ultimately were approved by the project engineer. In some instances, the defendant modified components to save expense to the County or to make the system more efficient. The defendant also showed that, where Halco performed extra work as the result of problems with Envirotech's equipment, Halco's compensation for such work included a 15 percent markup for overhead and profit.

In addition, Envirotech presented evidence that Halco's contract with Cowper could not have been completed in November 1980 because the "start-up" procedures could not have been accomplished. For example, the project engineer in November 1980 required Cowper to change major components of the system to make them explosion proof. Also, the main control panel was not operational until October 1982. In effect, Envirotech claimed that Halco sought to recover in this action all the alleged expenses for the years Halco remained on the job as if the other delays not attributable to Envirotech never occurred, in spite of the fact that the contract between the parties excluded the very damages Halco sought.

■ At the conclusion of the evidence, in connection with the main claim, the trial court considered the validity of the damage exclusion clauses of the contract. UCC § 8.2-302(1) provides that if the court "as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract." Noting that the principals of the parties to this contract were "sophisticated businessmen with access to legal counsel," the trial court ruled that the contract was not unconscionable, a ruling Halco does not attack.

However, the trial court, over defendant's objection, submitted the case to the jury. The court instructed the jury that the contract "excludes recovery of damages, and the plaintiff Halco is

lawfully bound thereby unless the delays attributable to Envirotech are so unreasonable as to substantially deprive Plaintiff of the value of its bargain." The court further told the jury that, " 'Unreasonable delays' means delays beyond the limit of reasonableness under the terms and conditions of the contract and the circumstances involved in the defendant's performance so as to substantially deprive plaintiff of the value of its bargain." The court also told the jury that the plaintiff had the burden of proof on these issues in connection with its claim that the defendant breached the contract.

■ UCC § 8.2-719, dealing with contractual modification or limitation of remedy, provides, in part,

> "(1) Subject to the provisions of subsections (2) and (3) of this section . . .
>
> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this title and may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>
> . . . .
>
> "(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.
>
> "(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable . . . ."

Envirotech contends that when the trial court "determined that the exclusion of consequential damages was not unconscionable, it was obligated to rule as a matter of law that those damages were not recoverable by Halco under *any* circumstances — *even if* the limited remedy had failed of its essential purpose." In other words, the defendant argues that an exclusion of consequential damages survives a finding that a limited remedy has failed of its essential purpose. Thus, according to the argument, the issue of "failure of essential purpose" should not have been submitted to the jury. Additionally, the defendant contends that the foregoing instruction was contrary to the provisions of the UCC and that,

through the instruction, "the court invited the jury to renegotiate the contract on Halco's behalf." We agree.

■ Initially, we must analyze § 8.2-719. The section recognizes the right of parties to contract freely while at the same time it protects against egregious clauses fashioned during negotiation where one party is in an unequal bargaining position. Subject to subsections (2) and (3), the statute authorizes the agreement to "provide for remedies in addition to or in substitution for those provided in this title" and allows the parties to "limit or alter the measure of damages recoverable under this title." For example, according to the statute, the buyer's remedies may be limited "to repair and replacement of nonconforming goods or parts." The agreement in the present case provided in the warranty section that Envirotech "will replace or repair . . . any part or parts . . . which Envirotech's examination shall show to have failed under normal use and service by the original user within one year following initial shipment to the purchaser."

■ According to subsection (2), "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose," all the other remedies under the UCC become available. This means, according to Official Comment 1, that "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." The language of the subsection does not speak to clauses oppressive at their inception, but focuses on the application of the agreement to novel circumstances not contemplated by the parties that arise during performance. Anderson, *Failure of Essential Purpose and Essential Failure on Purpose: A Look at Section 2-719 of the Uniform Commercial Code*, 31 Sw.L.J. 759, 763-64 (1977).

■ In this case, the parties agreed that Halco's remedy for non-conforming equipment was to be limited to replacement or repair. We will assume without deciding that this limited remedy failed of its essential purpose. In other words, we will assume that by action or inaction, Envirotech, even though exercising good faith, did not fulfill within a reasonable time its obligation to replace or repair the equipment it furnished. As a result of the delay, Halco was deprived of the substantial value of its bargain because it was unable to complete its work on time and was required to remain on the job for months. The question then becomes whether the

failure of the essential purpose of the limited remedy automatically results in abrogation of the consequential damages disclaimer. We hold that it does not.

■ Although there is a split of authority on this issue, *see Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3rd Cir. 1980), *cert. dismissed*, 457 U.S. 1112 (1982), we conclude that the consequential damages disclaimer in this case should be treated as an independent contractual provision, valid unless unconscionable. *See Lewis Refrig. v. Sawyer Fruit, Veg. & Cold Storage*, 709 F.2d 427, 434 (6th Cir. 1983).

Subsection (3) of § 8.2-719, as we have noted, provides, "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Official Comment 3 states that the subsection "recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner." The Comment further notes that, "Actually such terms are merely an allocation of unknown or undeterminable risks."

■ A number of logical, sound reasons mandate why, without more, the failure of a limited remedy of repair should not invalidate a wholly distinct clause of the contract excluding recovery for consequential damages. In the first place, the substantive content of subsections (2) and (3) of the statute are distinctly different. Subsection (2) focuses on failure of essential purpose while subsection (3) depends on a judicial determination of unconscionability. *Lewis Refrig.*, 709 F.2d at 435. Also, unconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed, *id.*, while failure of essential purpose relates to circumstances arising during performance of the agreement. In addition and from a practical standpoint, where, as here, experienced parties agree to allocate unknown or undeterminable risks, they should be held to their bargain; courts, or juries, should not be permitted to rewrite the agreement. *See S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363, 1374-76 (9th Cir. 1978). *See generally* Note, *The Validity of Consequential Damage Disclaimers Following Failure of Essential Purpose of an Exclusive Remedy: S.M. Wilson & Co. v. Smith International, Inc.*, 33 Sw.L.J. 930 (1979).

■ Consequently, in view of the unchallenged ruling by the trial court that the damage exclusion clauses were not unconscionable at inception of the contract and there being no circumstances

in the failure by defendant to perform that make it unconscionable to enforce the parties' allocation of risk, we conclude that the clauses are valid and enforceable. Thus, the trial court erred in submitting Halco's claim for consequential damages to the jury; judgment in favor of Envirotech should have been entered at the conclusion of the evidence.

Because of the view we take of the plaintiff's claim, it is unnecessary to address the other issues raised by Envirotech dealing with the plaintiff's failure to prove that defendant caused the delays, the plaintiff's failure to apportion damages, and the plaintiff's disentitlement to recovery for overhead expenses.

Finally, we address the issue raised by the second appeal relating to the trial court's action in setting aside the jury verdict on the counterclaim and entering judgment in favor of Envirotech for $96,314.

In response to a request for admission, Halco admitted that: "As of October 1, 1982, Defendant had not been paid $115,076.90, which was being held to offset Halco's damages due to Defendant's delays in completion." At trial when the response was received in evidence, the foregoing amount was reduced to $96,314. This was because of payments made by Halco and credits given by Envirotech in connection with the 1980 dispute which arose after Halco refused to make full payment and Envirotech stopped making further deliveries.

▆▆ Rule 4:11(b), dealing with the effect of responses to requests for admission, provides that: "Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." The foregoing response was not withdrawn and the only amendment was in the amount stated. Therefore, conclusively established were the facts that (1) Halco had not paid Envirotech for equipment delivered and (2) the funds were not paid for the sole purpose of offsetting the alleged delay damages. Accordingly, and because Halco was not entitled to recover for delay damages, Envirotech was due payment for equipment it had delivered. Thus, the trial court correctly set aside the verdict on the counterclaim.

For these reasons, the judgment in favor of Halco on the main claim will be annulled and final judgment will be entered here for

Envirotech. The judgment in favor of Envirotech on the counter-claim will be affirmed.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*