Louis R. REIBOLD, Jr., Plaintiff,

v.

SIMON AERIALS, INC., Defendant.

Civ. A. No. 2:93cv1231.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 22, 1994.

**194**

Martin A. Thomas, Decker, Cardon, Thomas, Weintraub, Coureas & Huffman, Norfolk, VA, for plaintiff.

Mark D. Loftis, James Wilson Jennings, Jr., Woods, Rogers & Hazlegrove, Roanoke, VA, for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is presently before the Court on defendant's motion for summary judgment. The Court heard argument on this motion on June 28, 1994. For the reasons stated below, the Court now grants in part and denies in part this motion.

### I. Facts

The plaintiff, Louis Reibold, is an employee of the Hertz Equipment Rental Corporation ("Hertz"). Hertz is a national rental agency which rents numerous types of industrial and construction equipment to various contractors and industrial users. Hertz purchases this equipment from a variety of manufacturers. Hertz maintains a staff of mechanics at various locations to service and repair this equipment. In Hertz's "Eastern Region," which includes the Tidewater area, Hertz operates out of 10 different locations.

The plaintiff Reibold is an experienced mechanic. At the time of the accident, Reibold was acting within the scope of his employment with Hertz at their Virginia Beach, Virginia facility. Reibold was injured on January 11, 1992, while performing diagnostic and repair work on an engine in a machine known as the Simon MPN–60 aerial lift. While the engine was running, Reibold attempted to make adjustments to the engine. He badly cut his hand when it came in contact with an unshielded cooling fan. This fan is located on top of the engine several inches above the air-filter and carburetor and immediately below the radiator through which the fan blows.

The Simon MPN–60 aerial lift is manufactured by the defendant, Simon Aerials, Inc. ("Simon"). The aerial lift machines are essentially a platform mounted on a boom and are used to do work in high places. There are several different configurations on the basic machine, some with longer or shorter booms, some with different engine configurations, and so forth. Hertz owns almost 90 aerial lift machines of various configurations. Deposition testimony indicates that at least 10 of these machines were of the same configuration involved in this accident.

The particular machine involved in this accident was configured to run on either gasoline or propane. Because these "dual fuel" engines are larger than the average engine, the radiator was placed in a somewhat unusual location above the engine at an angle rather than in the more typical location in front of the engine in line with the drive shaft. A cooling fan was located beneath the radiator to draw air through it. The fan is hydraulicly driven and pulls air up through the engine, past the radiator, and out through louvered openings in the machine casing.

The Operator's Manual available at the time of the accident does not alert the mechanic of the close proximity of the fan and the carburetor. No warning labels indicate the presence of the fan, although radiator type engines usually have a fan. No screen shields the fan from such accidents. In fact, the fan is somewhat shielded from a mechanic's point of view by the metal casing of the machine. However, there are louvers on the top of the machine in this vicinity.

The particular MPN–60 lift involved in this action was manufactured by Simon and sold to Hertz in August of 1989. At the time of delivery, Simon also provided a Predelivery Inspection/Adjustment Report, an Operator's Manual, a Service Manual, and an illustrated Parts Catalog. The Predelivery Inspection/Adjustment Report must be filled out, signed, and returned in order for the warranty to take effect. Although the Report does not require inspection of the fan itself, it does require inspection of specific parts that appear to be in the area of the fan such as the "Air Cleaner" and the radiator.

Included in this paperwork, Hertz received a "Twelve Month Limited Warranty" for the aerial lift. In large, all-capitalized print set off from the rest of the text, this Warranty states:

> THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

The warranty also seeks to limit the remedy for breach to replacement of defective components and to eliminate any other remedies. It states:

> In no case shall the Company be liable for any special incidental or consequential damage (including without limitation loss of profits, loss of revenue, cost of capital, cost of substitute equipment, downtime, claims of third parties and injury to person or property) based upon breach of warranty, breach of contract, negligence, strict liability in tort, or any other legal theory.

Finally, the warranty explicitly notes that this agreement allocates the risks between the parties and cannot be modified absent a writing signed by an officer of the Company. The plain language of the warranty states:

> This limited warranty allocates the risks of product failure between the Company and the Buyer, and that allocation is recognized by both parties and is reflected in the price of the goods.

> This written warranty is understood to be the complete and exclusive agreement between the parties, superseding all prior agreements, oral or written and all other communications between the parties relating to the subject matter of the warranty. No employee, agent or distributor of the Company or any other person is authorized to state or imply any additional warranties on behalf of the Company, nor to assume for the Company any other liability in connection with any of its products, unless made in writing and signed by an officer of the Company.

This warranty was the standard warranty between Simon and Hertz as negotiated in their National Vendor Agreement. This Agreement contained many other provisions controlling, for instance, how the vendors would provide information and support for their products and how Hertz would proceed if it desired to make design changes to the products. The relationship between Simon and Hertz extends over several years and multiple purchases. According to deposition testimony from corporate representatives of Simon, Hertz was "probably" Simon's single largest customer.

## II. Analysis

Plaintiff is proceeding under three possible theories in this case. First, plaintiff asserts that he can recover under either the express warranty of merchantability stated in the purchase order or an implied warranty of merchantability as created by law. Defendant asserts that they properly disclaimed such warranties. Second, plaintiff asserts that he can recover under a theory of negligent failure to warn of the risks posed by the fan. Defendant asserts that the danger was open and obvious to a skilled mechanic and that because Hertz was a sophisticated user of the equipment, defendant could reasonably rely on Hertz to issue any necessary warnings. Finally, plaintiff asserts that he can recover under a theory of negligent design. Defendant has not moved for summary judgment on this ground. For the reasons stated below, this Court GRANTS defendant's motion for summary judgment on the warranty claim. However, because material facts remain in dispute, this Court DENIES defendant's motion for summary judgment on the negligence claims.

### A. Standard For Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered for the moving party

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Supreme Court has interpreted this language as mandating the entry of summary judgment where a party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of the moving party may be discharged by pointing out to the court the lack of evidence supporting the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. Where the non-moving party bears the burden of proof at trial, that party must produce

more than a "scintilla of evidence ...; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). *See also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that to rebut a motion for summary judgment in a civil conspiracy case, there must be some direct evidence of conspiracy where the inference of lawful conduct from the circumstantial evidence is at least as plausible as are inferences of conspiracy from circumstantial evidence). In the introduction of the Federal Judicial Center's monograph on summary judgment, the authors comment on the significance of these three 1986 Supreme Court decisions:

> In its 1986 trilogy of summary judgment decisions, the Supreme Court infused Rule 56 with new legitimacy and opened the way toward a clearer and more coherent jurisprudence. Growing concern over cost and delay in civil litigation has focused increased attention on Rule 56 as a vehicle to implement the objectives of Fed. R.Civ.P. 1—the just, speedy, and inexpensive resolution of litigation. Achieving these objectives requires informed and sophisticated use of the rule.

William W. Schwarzer, Alan Hirsch, and David J. Barrans, Federal Judicial Center, *The Analysis and Decision of Summary Judgment Motions* vii (1991).

### B. The Warranty Claim

Plaintiff seeks to recover on the warranty for his personal injury. Because the privity requirements have been abolished, foreseeable users of goods may bring actions under the theory of warranty against the manufacturer or seller of the good. Va.Code § 8.2–318. However, as a corollary to that proposition, a manufacturer or seller of goods may disclaim warranties and limit remedies as to both the buyer and any such foreseeable user. Va.Code § 8.2–318, Comment 1. Such a disclaimer or limitation is constrained only by the formal requirements of each of these sections and by the substantive requirements

of unconscionability. Va.Code §§ 8.2–316, 719, 718, 302.

As a preliminary matter, the Court must determine that the warranty described above is the controlling warranty in this case. In their brief, plaintiff asserted that the warranty on the back of the purchase order should be controlling. However, at oral arguments, plaintiff appeared to concede that the warranty discussed herein was negotiated between Hertz and Simon for all purchases pursuant to Hertz's National Vendors Agreement with Simon. Having reviewed the deposition testimony submitted, the Court finds that it is undisputed that Hertz and Simon did negotiate such an agreement and that the warranty discussed herein is the controlling warranty.

Simon asserts that with this warranty they have validly disclaimed any implied or express warranty, other than an agreement to inspect and repair or replace any defective parts. The language in the warranty plainly attempts to do so. The language complies with the requirements of the Uniform Commercial Code that it be conspicuous. Va. Code § 8.2–316. The warranty also seeks to limit the remedies available by excluding any "special incidental or consequential damages." Va.Code § 8.2–719.

As one authority on the Uniform Commercial Code has noted, it is important to keep the distinction between disclaiming a warranty under section 316 and limiting or excluding remedies under section 719. James J. White and Robert S. Summers, *Uniform Commercial Code* § 12–11 (3d Ed.1988). By disclaiming a warranty, a party may seek to limit their contractual liability by reducing the number of situations in which the seller can be in breach of the warranty. By limiting or excluding remedies, a party only restricts remedies available once a breach has been established. *Id.*[1] In this case, the defendant-manufacturer has sought both to disclaim any warranty of merchantability or fitness for a particular purpose and to exclude any remedies for consequential damages.

■ Section 2–316 of the Uniform Commercial Code as adopted in Virginia provides for the disclaimer of warranties by following certain formal requirements. Va.Code 8.2–316. The Uniform Commercial Code provides for limitation of remedies in sections 2–718 and 2–719. Section 2–719 of the Uniform Commercial Code as adopted in Virginia provides that

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Va.Code § 8.2–719(3). This language clearly establishes that, with the exception of consumer goods, one may disclaim liability for any consequential damages. White and Summers, *Uniform Commercial Code* § 12–11 n. 6. Thus, with the exception of consumer goods, the burden remains on the plaintiff to demonstrate that any such disclaimer or limitation is unconscionable. White and Summers, *Uniform Commercial Code* § 12–11.

■ Furthermore, the unconscionability analysis should focus on the relative bargaining power of the companies who entered into the agreement, not the bargaining power of the plaintiff-employee relative to the defendant-manufacturer. As the court stated in *Goodbar v. Whitehead Bros.*, a third party user of the product may not seek a greater benefit from the warranty than that intended by the original parties, unless, of course, it is a consumer product. 591 F.Supp. 552, 567 (W.D.Va.1984) *aff'd sub nom. Beale v. Hardy* 769 F.2d 213 (4th Cir.1985) (adopting the district court's opinion). Accordingly, Reibold bears the burden of proving the agree-

---

1. White and Summers note that one could strictly construe the U.C.C. to prevent the application of unconscionability to disclaimers of warranties under section 316 because that section does not explicitly refer to section 302, the general unconscionability provision for the U.C.C. White and Summers, *Uniform Commercial Code* § 12–11. Note also that section 719 does not explicitly incorporate the formal requirement of "conspicuousness" for the limitation of remedies. Several courts have held that such limitations need not be conspicuous.

ment between Hertz and Simon was unconscionable.[2]

Plaintiff has not even attempted to meet this burden. Nor could plaintiff meet this burden if he tried. Courts will rarely find unconscionable contracts arising in a commercial context. White and Summers, *Uniform Commercial Code* § 12–11; *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir.1989) *cert. denied,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990) (outlining factors for determining unconscionability). Clearly, Hertz is a very sophisticated national company which purchases a variety of equipment from companies that are often smaller than Hertz itself. In fact, in this case, Hertz was (probably) the largest single customer of Simon's. Hertz was clearly capable of negotiating the terms of the agreement with the manufacturer to determine the extent of the warranty described. This is not a case of an isolated consumer, nor is this a consumer product. This is a commercial product for industrial use. The parties are clearly capable of apportioning the risks in these circumstances and did so. It would be hard to imagine a circumstance less likely to yield a finding of unconscionability.[3]

Instead of trying to demonstrate unconscionability as to the agreement between Hertz and Simon, plaintiff asserts that *any* disclaimer of damages for personal injury must be unconscionable. In support of this proposition, plaintiff cites *Hiett v. Lake Barcroft Community Ass'n,* 244 Va. 191, 194–95, 418 S.E.2d 894, 896 (1992). In that case, the

Virginia Supreme Court held that "provisions for release from liability for personal injury which may be caused by future acts of negligence are prohibited 'universally.'" *Hiett,* 244 Va. at 195, 418 S.E.2d at 896 (citing *Johnson's Administratrix v. Richmond and Danville R.R. Co.,* 86 Va. 975, 11 S.E. 829 (1890)). While this quote is accurate, plaintiff's contention that the "rationale underlying this decision applies equally to negligence actions and warranty actions" is not. *Hiett* only prohibits disclaimers for liability for "acts of negligence." While no party may ever disclaim liability for negligence, one may disclaim contractual liability within the limits discussed above. Thus, Simon may properly disclaim any contractual liability for consequential damages including personal injury. However, to the extent that Simon's warranty attempts to exclude tort theories of liability, it is unconscionable under *Hiett.*

In Virginia and many other states, the distinction between tort actions and contract actions survives, despite the wide-spread abolition of privity requirements. From a practical point of view, contributory negligence may be the most significant remaining example of the difference between the two theories in a personal injury case. In Virginia, contributory negligence still serves as a complete defense to a plaintiff's tort claim, but is not a defense to a warranty claim because it is a claim based in contract. *Jones v. Meat Packers Equip. Co.,* 723 F.2d 370, 373 (4th Cir.1983). Remedies may also differ slightly depending on the theory of

---

**2.** This may be in conflict with dicta in another opinion recently issued by this district. In *Buettner v. Super Laundry Machinery,* 857 F.Supp. 471 (E.D.Va.1994), the Court, in agreement with *Goodbar,* 591 F.Supp. at 567, held that with the exception of consumer goods that cause personal injury, "the user can rise no higher than the purchaser through which he obtained the implied warranty."

However, in considering Buettner's claim that the contract was unconscionable as to her, the *Buettner* court took a slightly different position than that taken herein. Buettner argued that as a third party employee who was not part of the contract negotiations between her employer and the manufacturer, the contract should be found unconscionable as to her. The *Buettner* court refused to create a "de facto" warranty for third party users by ruling that all disclaimers were unconscionable as applied to non-parties to the

agreement. However, the Court did consider the particular circumstances of the plaintiff in evaluating whether the agreement was unconscionable as to her. This Court holds that such an analysis is unnecessary. *Compare Young v. J.I. Case Co.,* 1994 WL 506403, 1991 U.S. Dist. LEXIS 15816 (E.D.Va. June 3, 1991) (Spencer, J.) (disclaimer of warranty by manufacturer may be effective against rental company and its employees but not against third party injured while machinery was operated by employee of rental company).

**3.** The Court notes, however, that there may be instances where an employee or other third-party can show unconscionability in the original contract. Just as mere status as a non-party to the contract will not make the contract *per se* unconscionable, nor will such status make the contract *per se* conscionable.

recovery. For instance, a plaintiff may recover exemplary damages for a tort claim, but not for a contractual claim. *Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956). Procedural elements to the claim may also differ. At one time, different statutes of limitation applied to tort and contract claims. *Cauthorn v. British Leyland U.K. Ltd.*, 233 Va. 202, 208, 355 S.E.2d 306, 309 (1987). Even to this day, some warranty claimants must provide notice under section 2–607 of the U.C.C. while tort claimants need not. Va.Code § 8.2–607. Interestingly enough, one of the essential elements of proof for a warranty of merchantability claim is the same as for a negligent failure to warn claim or a negligent design claim, *i.e.*, that the product was unreasonably dangerous when it left the manufacturer's control. *Lust v. Clark Equipment Co.*, 792 F.2d 436, 438 (4th Cir.1986).

Thus, it is important not to be lulled by the abolishment of privity and other similar doctrines into collapsing contract and tort claims into one indistinguishable legal doctrine. In order to preserve the ability of parties to negotiate and enforce contracts which distribute the risks of certain kinds of liability between them, courts must carefully distinguish between the two species of claims. Therefore, the only substantive limit on parties wishing to disclaim any contractual liability for consequential damages is unconscionability, and whether any agreement is unconscionable or not can only be examined with reference to the original parties to the bargain. No agreement can possibly be unconscionable with regard to a third party who may benefit from the agreement but who was not a party to the agreement in the first place.[4] Courts should not use the doctrine of unconscionability to re-write agreements. As the Virginia Supreme Court has stated, "where, as here, experienced parties agree to allocate unknown or undeterminable risks, they should be held to their bargain; courts, or juries, should not be permitted to rewrite the agreement." *Envirotech Corp. v.*

*Halco Engineering, Inc.*, 234 Va. 583, 592, 364 S.E.2d 215, 220 (1988) (cites omitted).

The consequences of this holding may appear harsh when first considered, but more careful review reveals that this result also makes sense from a both a legal and a policy point of view. First, the abolishment of privity was not intended to create rights but rather to remove an unwieldy and arcane defense. Second, allowing employer-purchasers to receive the benefit of their bargain with the manufacturer should result in economically efficient transactions which account for the employees' potential injury costs.

One must remember that before the abolishment of the privity requirement, the employee would likely never have had such a contractual "right" to recovery. The abolishment of privity prevented sellers from giving one type of protection to the immediate purchaser and another type of protection to other foreseeable users of the product. Va. Code 8.2–318, Comment 1. However, that principle has not been extended to force every purchaser of a good to bargain for all foreseeable users if it is not in the purchaser's best interest to do so. In other words, the abolishment of privity was a "negative" act; it only eliminated the defense of privity, it did not create positive rights in third parties. *Accord, Buettner*, 857 F.Supp. at 475. After the abolishment of privity, foreseeable users of a non-consumer good may receive exactly the benefit of the bargain between the purchaser and the seller, no more and no less. Accordingly, it is flawed reasoning to state that the purchaser is bargaining away their employees' contractual right to recovery as that "right" cannot arise prior to the bargain itself.

This legal argument is supported by basic economics as well. Given a disclaimer of warranty or a limitation of damages, the manufacturer avoids the potential costs from the extension of the warranty to such foreseeable users and can therefore offer the goods for a smaller price. In exchange for cheaper goods, the employer-purchaser will

---

4. Again, this holding is not intended to limit third parties from showing that the agreement between the original parties was unconscionable.

bear the major portion of these potential costs.

Under the worker's compensation laws, the employer must pay the injured employee's medical bills, lost wages up to two-thirds of the salary, and certain stipends for any permanent injury. Furthermore, the employer will typically tie up some of its funds in insurance (or self-insurance) against such accidents. When an employer pays these benefits to an employee injured by the negligence of another, the employer then becomes the subrogee of the employee's claim and may sue on the employee's behalf. Under Virginia law, any amounts the employer recovers above that which it paid to the employee must be held for the employee's benefit. Va.Code § 65.2–309. Thus, the employer actually bears most if not all of their employees' potential injury costs and should take into account this cost when negotiating such warranty disclaimers with its vendors. The employer-purchaser should ask themselves, "Are these cheaper goods worth the additional costs the company will bear?"

Accordingly, it makes good policy sense to allow employer-purchasers to negotiate warranties with manufacturers, because the employer is in an excellent position to measure and control the risks of employees injuring themselves while using such goods. Especially in a case such as this one, where Hertz maintains its own mechanics and engages in extensive company-wide safety training, it makes sense for Hertz to bear the risks of employee injuries in exchange for a cut in the price from the manufacturer. In any case, where two sophisticated and relatively equal parties enter such bargains—whether the bargain appears to make sense or not after the fact—it is not for the court or for juries to second-guess and rewrite such bargains. *Envirotech Corp.*, 234 Va. at 592, 364 S.E.2d at 220.

### C. Negligence Theories of the Case

■ In a products liability case, the plaintiff must establish "(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purposes; and (2) that the unreasonably dangerous con-

dition existed when the goods left the defendant's hands." *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). A product may be unreasonably dangerous if there were defects in manufacture or assembly, if it was imprudently designed, or if it was not accompanied by adequate warnings. *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1114 (4th Cir.) *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Plaintiff alleges the latter two theories in his complaint.

### 1. Negligent Failure to Warn

■ The Virginia Supreme Court has stated that a manufacturer may be liable if the manufacturer

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform [the user] of its dangerous condition or of the facts which make it likely to be dangerous.

*Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962, 252 S.E.2d 358, 366–67 (1979) (citing § 388 of Restatement (Second) of Torts).

Defendant asserts that he cannot be liable under this theory because plaintiff's employer, Hertz, was a "sophisticated user," Simon could reasonably rely on Hertz to warn its employees. The sophisticated user doctrine is encapsulated in Comment n to section 388 of the Restatement (Second) of Torts. While this Court could find no Virginia case explicitly adopting the sophisticated user doctrine, a number of previous federal cases interpreting Virginia law have so held. In *Willis v. Raymark Indus.*, the Fourth Circuit explained the doctrine as follows

the sophisticated user defense may be permitted in cases involving an employer who was aware of the inherent dangers of a product which the employer purchased for use in its business. Such an employer has a duty to warn his employees of the dangers of the product, and the manufacturer

is absolved of any concurrent duty to warn those same employees.

905 F.2d 793, 796 (4th Cir.1990). *See also Goodbar,* 591 F.Supp. at 559 (in Virginia, there is no duty on product suppliers to warn employers of knowledgeable industrial purchasers as to "product-related hazards"); *Morsberger v. Uniking Conveyor Corp.,* 647 F.Supp. 1297, 1299 (W.D.Va.1986) ("a manufacturer owes no § 388(c) duty to warn an employee of a knowledgeable industrial purchaser"); *Jones,* 723 F.2d at 373 ("We have previously concluded that Virginia's law includes comment n of § 388, 'Warnings given to third person.'").

While the Court believes that Hertz clearly is a sophisticated user of Simon's products, the facts presently before the Court are not sufficient to resolve the question of whether Simon could reasonably rely on Hertz to provide a warning to its employees. As the *Willis* court noted, the "fact that an employer possesses knowledge of a product's dangers does not extinguish the manufacturer's liability." The manufacturer still has a duty to balance the factors in comment n, including the burden of placing a warning sign. *Willis,* 905 F.2d at 797. Thus, under somewhat similar factual circumstances, the *Jones* court stated that

> comment n of § 388 counsels that a factual issue arises about the adequacy of a warning to an intermediary rather than to the person directly exposed to the danger. It was for the jury to determine in light of the factors mentioned in comment n—and not for the judge to rule as a matter of law—whether [the manufacturer] acted unreasonably in relying on [the employer] to warn its employees.

723 F.2d at 374. While the *Goodbar* court, with an apparently much more developed record before it, was willing to grant summary judgment on this ground, this Court declines to do so at this time. Accordingly, defendant's motion for summary judgment on this ground is DENIED. However, this judgment in no way prejudices the possibility of a directed verdict at the close of the evidence if it should be warranted.

### 2. *Negligent Design*

The Fourth Circuit recently reviewed the requirements for a negligent design case in *Alevromagiros v. Hechinger Co.,* 993 F.2d 417 (4th Cir.1993):

> To prevail in a products liability case under Virginia law, the plaintiff must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary and foreseeable use. In addition, the plaintiff must establish that the defect existed when it left the defendant's hands and that the defect actually caused the plaintiff's injury.

*Id.* at 420 (citations omitted). Thus, there are three prongs the plaintiff must establish to make out his product liability case: 1) that the product contained an unreasonably dangerous defect; 2) that the defect actually caused the plaintiff's injury; and 3) that the defect existed from the time the product left the manufacturer until the time the product injured the plaintiff.

Defendant does not move for summary judgment on this ground. Accordingly, this theory must be tried before a jury, though again, this judgment in no way prejudices the possibility of a directed verdict at the close of the evidence if it should be warranted.

### III. *Conclusion*

For the foregoing reasons, this Court GRANTS defendant's motion for summary judgment only on plaintiff's claim for breach of warranty. Plaintiff's claims for negligent failure to warn and negligent design will proceed to trial.

IT IS SO ORDERED.